**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, CA 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Fl.
San Diego, CA 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

Attorneys for Plaintiff MARILYN NIEVES,
Individually, and on Behalf of the Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN NIEVES, Individually, and on Behalf of the Class,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation<br><br>Defendants. | Case No.:  3:21-cv-01415-H-KSC<br><br>**FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  DECLARATORY RELIEF OR JUDGMENT (CAL. CIV. CODE § 1060, *ET SEQ.*);**<br><br>**(2)  BREACH OF CONTRACT;**<br><br>**(3)  UNFAIR COMPETITION (CAL. BUS. AND PROF. CODE § 17200, *ET SEQ.*);**<br><br>**(4)  BAD FAITH (INDIVIDUAL ONLY); AND**<br><br>**DEMAND FOR JURY TRIAL** |

*///*

Plaintiff MARILYN NIEVES, Individually, and on Behalf of the Class, and as defined below, amends her original Complaint and makes the following allegations against Defendant UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation ("United") as follows:

## I. OVERVIEW

**A.    Summary of Procedural Status of Action and Bases for Amendment**

1.    This is a dispute involving United's past and ongoing violations of California Insurance Code Sections 10113.71 and 10113.72 "the Statutes"), regulating termination of life insurance policies after nonpayment of premium.  The Statutes mandate certain notice provisions before allowing for lawful termination. United refuses to apply these mandates.  After United unlawfully terminated Plaintiff's life insurance policy, she was forced to bring individual and Class claims for Declaratory Relief, Breach of Contract, Unfair Competition and an individual claim for Bad Faith.

2.    Since January of 2013, United has unlawfully terminated thousands of life insurance policies, leaving policy owners and potential beneficiaries uninsured, causing the loss of years of investment, and loss of protection to policy owners and their beneficiaries, often crucially important during the most stressful times, when funds from life insurance are the centerpiece of estate and retirement planning.

3.    The action seeks recovery of the millions of dollars of unpaid policy benefits owed to vested beneficiaries. It also seeks recovery of tens of millions of dollars paid by policy owners in the form of "Unearned Premiums" --amounts unlawfully charged by United to revive or reinstate policies unlawfully terminated by United. Combined with the unpaid policy benefits, these amounts are likely in the hundreds of millions of dollars and were improperly held by United in continuing defiance of laws that went into effect more than eight years ago.

2

4.   The action also seeks to provide equitable relief in the form of restitution, injunction, revival of policies and other remedies, to prevent United's ongoing violations of the law and to disgorge the ill-gotten gains of United's past violations.

5.   This matter was originally filed ("Original Action") on July 6, 2021, in state court and was subsequently removed to federal court by United.  See ECF Doc. 1.  United retained counsel and removed the Original Action, acknowledging the allegations of the original Complaint placed into controversy for Class damages over $5,000,000 and with a putative Class in excess of 1,000 members.  After removal, based on United's acknowledgment that the action raised significant allegations, several events occurred requiring this amendment.

6.   After the filing of the Original Action, a decision was rendered by the California Supreme Court significantly affecting this action. On August 30th, 2021, the California Supreme Court rendered a final and now binding decision, finding the subject Statutes apply not only to Plaintiff's policy, but to a large segment of the putative Class--tens of thousands of policy owners and vested beneficiaries whose policies were lapsed in violation of the Statutes. This decision in *McHugh v. Protective Life Ins. Co.*, 12 Cal.5th 213 (2021) further confirms the mandatory nature of the provisions in question and will solidify a significant class of Californians who require judicial assistance to remedy the harm suffered.[1]

---

[1] Additional relevant federal decisions have also been recently issued. Recently, the Ninth Circuit upheld a decision by the Southern District concluding that failure to strictly comply with the provisions of The Statutes renders any attempted termination legally ineffective and that, therefore, policy benefits are owed. *Thomas v. State Farm Life Ins. Co.,* No. 20-55231, 2021 U.S. App. LEXIS 30035 (9th Cir. Oct. 6, 2021). Currently, a class action judgment holding the same is pending final argument in the Ninth Circuit. *Bentley v. United of Omaha Life Ins. Co.,* No. 2:15-cv-07870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107 (C.D. Cal. May 1, 2018).

7.    Additionally, since the filing of the original Complaint, United engaged in a series of litigation tactics and actions that further confirm the merit of Plaintiff's individual and Class claims.

**B.    United's Post-Filing "Offer" to "Reinstate" Plaintiff's Policy**

8.    Plaintiff Marilyn Nieves is a United policy owner.  She purchased her policy to insure the life of her son Michael, who suffers from autism. United improperly terminated the Nieves policy, without applying the Statutes, in 2018.  United failed to provide required notices and, with knowledge of that fact, still terminated Ms. Nieves' coverage. After two years of unsuccessful attempts to revive the policy, Plaintiff retained counsel, who were also unsuccessful in convincing United to properly retract the unlawful termination.  While ultimately admitting it had improperly terminated the policy, United nonetheless demanded that Ms. Nieves pay what United called "past due premium" in order to "reinstate" the policy.  This was a demand to collect premiums which had not been earned by United over the previous two years while United disclaimed the existence of a policy and during which United did not provide coverage. Hereinafter, this form of unearned and improper premiums will be referred to as "Unearned Premiums."

9.    Ms. Nieves' policy, having never been lawfully terminated, never needed to be "reinstated." Forcing the reinstatement in this manner devalued Plaintiff's policy in that it would allow United to contest or rescind the policy – a right United did not have before any so-called "reinstatement." *See* Cal. Ins. Code § 10113.5(a).

10.    Only after removing the matter to District Court, United attempted to eliminate Plaintiff's individual and putative Class claims by unilaterally asserting it would "waive" its previous grounds for refusing revival of the policy and stated it would "reinstate" her policy without insisting on

4

payment of Unearned Premiums. This offer did not address the claims of the Class and did not admit that in fact there were no premiums owed by Ms. Nieves or that her policy did not need to be reinstated in the first place.

11.    The "offer" was not made in good faith and was a litigation tactic undertaken on the advice of United's litigation counsel. The "offer" was nothing more than an attempt to provide an argument to eliminate Plaintiff's standing, not only to pursue her own claims, but the substantial claims of the Class. The "offer" was individually directed to Plaintiff and did not include a similar "offer" of "waiver" to other Class members and was timed to present a basis for a planned motion to dismiss which otherwise could not have been made. The "offer" also did not address all forms of harm United caused Ms. Nieves, including the devaluation of her policy.  Finally, the "offer" was made in part because United appreciated Ms. Nieves was not in a position to obtain coverage from any other insurer. Because of United's denial of reinstatement, based on Michael's health condition, no other insurer would ever provide the insurance and protection which the United policy provided. Once denied life insurance, one is likely to always be denied coverage.  United's "offer" was perhaps the only way Ms. Nieves was ever again going to be able to obtain coverage for her autistic son, and United knew that.

**C.    Plaintiff's "Non-Waiver" Condition/Reservation of Rights to United's Purported "Reinstatement" Offer**

12.    Ms. Nieves responded to the "offer" and advised that if the premium intended to be tendered by her was accepted, that Ms. Nieves was not waiving any of her rights and was reserving her rights to assert the claims in the pending action, as well as her right to prosecute the Class claims.  In her response to United, Ms. Nieves specifically advised United not to accept premiums if it intended to argue that the claims of Ms. Nieves or the Class

had somehow been satisfied or no longer existed. She also advised United that she would consider United's "waiver" as an admission of liability. Plaintiff does not agree that any past due premiums were ever owed or that United is "waiving" any rights in doing what is legally required of it by no longer demanding the payment of "Unearned Premiums."

13.    United did not object to Ms. Nieves' letter. With knowledge of the terms and Plaintiff's explicit conditions, United then removed premium from Ms. Nieves' bank account, thus renewing her coverage for the next period set forth in the policy. This renewal, over the objection of Ms. Nieves, was called and is maintained by United to be a "reinstatement."

14.    Plaintiff is informed and believes that Ms. Nieves' policy is now considered "active" and "in force," but disputes remain.

15.    Finally, a continuing issue remains as to United's apparent claim that somehow Plaintiff's non-waiver condition and reservation are invalid and that Plaintiff allegedly waived her right to seek remedies on her behalf or on behalf of Class members by conditionally paying her premiums to revive the policy. These assertions are in bad faith and ignore the clear acceptance of the nonwaiver and reservation of rights conditions. Plaintiff contends that it is United, by acquiescence, which has waived any right to challenge Plaintiff's standing and right to recover or seek remedy from the numerous improper acts of Defendant.

16.    Subsequent to removal and United's acceptance of Plaintiff's conditions, United filed a Motion to Dismiss.  The gravamen of this motion was to argue that Ms. Nieves was not injured or harmed by the years of misconduct by United because her policy was now in force. These assertions were per se false, but amendment of the action was still necessary.

17.    Each day United's violations of the law are morphing into more serious manifestations of its disregard for the law, as well as the rights of its

3:21-CV-01415-H-KSC

customers. As such, pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff amends the Complaint to address not only the inaccuracies raised in Defendant's Motion to Dismiss, but to address the full ramifications of recent developments in the law, as well as the consequence of United's misconduct over the last year.

## II.  SUMMARY OF ALLEGATIONS AND BACKGROUND

### A. The Statutes

18.   Plaintiff is one of thousands of United customers whose life insurance policies were wrongfully terminated after January 1st, 2013, arising from Defendant's failure to comply with the Statutes. These provisions imposed new mandates regarding how an insurance company may legally terminate life insurance policies, arising from nonpayment of premium.

19.   Beginning on January 1, 2013, every life insurer doing business in this state must strictly comply with the notice and grace period provisions found in the Statutes, as well as existing in California common law, before it can lawfully lapse or terminate a life insurance policy for nonpayment of premium.  There are no exceptions.  The legal requirements of the Statutes are simple and failure to comply with all of these notice provisions voids any attempted termination or lapse as a matter of law until and unless there has been compliance with the Statutes.

20.   None of these statutory requirements are satisfied by substantial performance, nor are they excused by the conduct of the policy owner or the alleged subjective knowledge or intent of the policy owner.

21.   These provisions were intended to be self-effectuating and provide a uniform and simple procedure to allow life insurers to terminate life insurance policies for nonpayment of premium with little effort or cost, safely and fairly, and thereafter to provide the insurer, policy owners, beneficiaries, the courts, as well as regulators, a simple and objective

manner of determining whether a policy has in fact been lawfully terminated. The Statutes were clearly intended to protect insurers, as well as consumers. Regardless, United has demonstrated that it does not intend to comply with the Statutes now or in the future.

**B. United's Violation of the Statutory and Contractual Requirements**

22.   Despite full knowledge of the Statutes, United has refused to comply with them. Even after the *McHugh* decision, on information and belief, United still refuses to apply the Statutes to policies issued or delivered prior to January 1, 2013 (the date the Statutes were enacted), regardless of whether those policies renewed, converted, reinstated or continued in California after that date.

23.   United also refuses to fully comply with the Statutes for policies issued or delivered *after* January 1, 2013, as exemplified by the unlawful termination of Plaintiff's policy, which was issued and delivered to her in California in 2016 and was unlawfully terminated two years later.

24.   Even after the *McHugh* decision, on information and belief, Plaintiff alleges that United refuses to apply the Statutes at all to policies issued or delivered prior to January 1, 2013 (the date the Statutes were enacted), regardless of whether those policies renewed, converted, reinstated or continued in California after that date.

25.   And, in continual repudiation of the law, United still fails to accept the mandatory nature of the provisions, refuses to admit that prior terminations were invalid and that no "reinstatement" was necessary, still asserts that it may treat illegally-terminated policies as not in force, invalid, inactive and requiring no action on behalf of United, and continues to demand and keep Unearned Premiums.

26.   United has intentionally concealed from Ms. Nieves, its policy owners and beneficiaries, and other persons and entities with interest in its life

insurance products, the existence of these mandatory rules and procedures and the rights they guarantee. This concealment, scheme, and plan by United is intentional.

27. United was told in September of 2012 that the Statutes applied to pre-2013 policies. Thereafter, United learned from various courts, as early as 2016, that the Statutes applied to every policy in force as of January 1st, 2013.

28. For years before the sale of Plaintiff's policy, United was aware of its failure to comply with these provisions and has failed to take the appropriate corrective actions to remedy its noncompliance. Instead, United appears to have doubled down and made the decision to ignore the law, ignore court rulings, and deal with the occasional complaint without regard to its obligation to apply these rules properly and completely to all of its life insurance products utilized in this state. As is evident by Ms. Nieves' experience, United believes it can just unilaterally eliminate responsibility for its wrongs by a simple letter sent after suit and years of injury.

29. United's unlawful retention of premiums received from United's own unlawful conduct is substantial. Today, United holds tens of millions of dollars of Unearned Premiums paid by its customers for periods of time in which United had illegally repudiated the policies and illegally declared policies lapsed, terminated, out of force, or having no value. In addition, for those policies where the control and ownership transferred to the beneficiaries, United holds tens of millions of dollars of policy benefits owed which are being withheld on the patently false assertion that the policies were properly and legally terminated. United's customers who have suffered these charges are entitled to full restitution.

30. Today, United's wrongful violation of the Statutes continues, specifically, in relation to policies issued or delivered prior to January 1st, 2013.

31.    The harm suffered by Plaintiff and all Class members at its most basic level is a wrongfully terminated life insurance policy. Any assertion by an insurer that a customer's life insurance policy has lapsed, terminated, no longer has any value, was not or is not in force, or coverage has otherwise ended and has been repudiated, is legal harm and injury. This harm is common to every single victim of United's conduct.

32.    Additionally, many policy owners have been and continue to be forced into unnecessary reinstatements and in many instances have lost all reasonable access to any insurance at all. For those policy owners who have paid Unearned Premiums or paid higher premiums than were allowed by the law and the terms of the policy, as well as those policy beneficiaries who have been denied the payment of benefits, United retains those funds to its benefit and has taken no steps to correct its wrongful conduct. Therefore, United has been unjustly enriched by United's past and ongoing collection of Unearned Premiums, as well as its retention of unpaid policy benefits for those vested beneficiary Class members. Today, there is a legitimate need to provide restitution and disgorgement from United.

33.    United's misconduct extends to making misrepresentations to policy owners and vested beneficiaries. United has told numerous policy owners that they have no insurance, although their policies, unbeknownst to the policy owners are still legally in force. Today these people, their heirs, beneficiaries and others with interest, likely believe that the defaulted parties to these policies are the policy owners, when, in fact, the only party in default and the only party which disavowed and repudiated the policies was United.

## C. **Summary of Class Action Allegations**

34.    A classwide judicial remedy is likely the only way that United's past wrongs and harm can be addressed. United has had nearly eight years to

3:21-CV-01415-H-KSC

1    learn how to apply the Statutes and, based on the handling of Plaintiff's

2    policy, has not done so.

3    35.  United, which has been involved in active litigation on these Statutes,

4         clearly has not been subjected to any regulatory review of its compliance.

5    36.  Plaintiff and the Class are all United policy owners who have suffered the

6         effects of an illegally-terminated life insurance policy. The Class includes

7         policy owners where the condition of payment on the policy--the death of

8         the insured--has yet to occur, and also includes all vested beneficiaries

9         whose rights to benefits and to ownership of the policy have arisen upon

10        the death of the insured. Therefore, the Class includes all members who

11        stand as real-parties-in-interest of policies wrongfully terminated by

12        United. For purposes of this Complaint, hereafter the term "Policy Owners"

13        includes current and past policy owners, as well as vested beneficiaries in

14        which a policy was improperly terminated.

15   37.  As a current policy owner and a beneficiary of a United policy, Plaintiff is

16        a particularly appropriate class representative. Already Plaintiff has

17        obtained an admission by United of not only the obligation to revive an

18        unlawfully terminated policy, but the implicit admission that, in doing so,

19        United is not entitled to recovery of unearned premiums or a demand that

20        such premiums be paid before any revival of the policy.

21   38.  Ms. Nieves has retained experienced counsel involved not only in the

22        *McHugh* case, but also in other pending class actions involving other

23        insurers, and who are actively involved in discovery and investigation into

24        the history of these issues.

25   39.  There is an enormous need for this action. Many of the putative Class

26        members are unaware of their injury. The class action will likely provide

27        perhaps the only reasonable vehicle to provide notice to injured Class

28        members.  Plaintiff is informed and believes that United has not taken any

steps to inform its current or past policy owners or beneficiaries of these laws, despite the rendering of the *McHugh* decision. A class action will provide the appropriate vehicle to bring these issues to the attention of the victims of United.

40.    Plaintiff's standing as an aggrieved individual, and membership in the class resulting from United's conduct, cannot be reasonably refuted. Initially, Plaintiff's harm and claim for relief must be measured at the time her policy was terminated, when her requests for reinstatement were refused, her requests for revival were ignored, and, ultimately, when she was required to retain counsel and file suit against an insurer which refused a multitude of requests to admit its mistakes.

41.    Ms. Nieves has uncompensated and unresolved harm and damages, supporting all the causes of action. Ms. Nieves has suffered monetary loss, diminution in the worth of her policy, emotional distress, and further has suffered injury to the capacity to obtain insurance for her son. Due to United's unlawful termination and deceptive demand for reinstatement, Ms. Nieves has suffered a rejection of an application for insurance, which now must be disclosed on any further applications for insurance. United's breaches and conduct have caused real and lasting injury unaffected by United's tactical post-filing "offer" to reinstate the policy.

## III.  GENERAL ALLEGATIONS

### A. PARTIES

42.    Plaintiff Marilyn Nieves is an individual and the mother of the insured, Michael Nieves. Plaintiff is and has been a resident and citizen of San Diego County, California, at all times relevant, and is the owner and the sole, express beneficiary of the policy (hereinafter "Subject Policy.")  Plaintiff pursues these claims and causes of action individually, on her own behalf as the policy owner, as a putative beneficiary of the Subject Policy, and on

12

behalf of the Class.

43.  Defendant United is a Nebraska corporation and is engaged in the sale and administration of life insurance throughout the United States and other territories. It is a wholly-owned subsidiary of Mutual of Omaha Insurance Company. United is licensed to conduct business and does business throughout the state of California. United is a licensed/chartered life insurance carrier in California and is subject to regulation by California authorities. As of December 31, 2019, United was administering more than 180,322 active, in-force, ordinary life insurance policies in California alone, representing an insured amount of more than $21 trillion of coverage. It was also administering 2,817 group policies, representing $22 trillion of coverage, all of which must be administered in compliance with the Statutes which are the subject of this lawsuit. United issues more than 28,000 ordinary life insurance policies and more than 450 new group policies every year in California. United lapses and terminates, for nonpayment, thousands of California life insurance policies every year.

## B.  JURISDICTION AND APPLICATION OF STATE LAW

44.  This is a civil matter of which the superior courts of the state of California had original and continuing jurisdiction in whole or in part. Defendant asserts that this District Court has jurisdiction, but will also assert that various claims of Plaintiff's are not within the jurisdiction this Court. Plaintiff does not waive any claims concerning the appropriateness of Defendant's removal or this Court's jurisdiction.

45.  This action arose in the state of California and exclusively involves application of laws of the state of California, as well as life insurance policies issued, delivered or in some fashion in force in the state of California on or after January 1st, 2013.  Plaintiff does not concede or admit that the District Court has full or complete jurisdiction and Plaintiff reserves

3:21-CV-01415-H-KSC

her right to contest the jurisdiction of this Court.

## C.  FACTS COMMON TO ALL CLAIMS FOR RELIEF

46.    In the fall of 2012, the California Legislature drafted and signed The Statutes into law.  The Statutes were in part written by not only consumer advocates for seniors and the disabled, but also by United's own trade union, the American Council of Life Insurers (hereinafter "ACLI") and its California component:  the Association of California Life and Health Insurance Companies (hereinafter "ACLHIC") which, on behalf of United and other insurers, ultimately supported the legislation and goals of the Statutes to protect California consumers from forfeiture of life insurance arising from nonpayment of premium. The Statutes were further intended to provide California a uniform and simple set of rules and procedures regarding forfeiture of life insurance in force under the jurisdiction of California insurance law on or after January 1st, 2013. These provisions thus became applicable to every life insurance policy of any kind within the jurisdiction of the state of California and created mandates that work consistently with, and amongst, other provisions such as California Insurance Code Sections 41, 10508, 10111.5 and 10111.

47.    Per *McHugh v. Protective Life Insurance Company*, the Statutes apply to "all life insurance policies in force when these two sections went into effect regardless of when the policies were originally  issued." The scope of the Statutes extends to any type of life insurance contract or "policy" in effect and in force subject to the jurisdiction of the state after January 1st, 2013.  Under the express terms of the Statutes, "a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided." Insurance Code Section 10111.71(c). More specifically, Section 10113.71 reads as follows:

### § 10113.71 Grace Period; Notice of pending lapse

**and termination of policy; Mailing requirement**

    (a)  Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

    (b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

    (2) This subdivision shall not apply to nonrenewal.

    (3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid.  However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

    (c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

    (a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

    (b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

48. The Statutes codified long-existing California common law regarding forfeitures of life insurance and standardized notice periods, grace periods as well as an explanation of those individuals and entities requiring the mailing of notice.

49. Since January 1, 2013, every life insurer doing business in this state, before it can lawfully lapse or terminate a life insurance policy for nonpayment of premium, must strictly comply with the notice and grace period provisions found in California Insurance Code Sections 10113.71 and 10113.72, as well as existing in California common law. There are no exceptions.

50. First, every life insurance policy must--after January 1st, 2013--"contain" a 60-day grace period. This means a 60-day grace period must be written into and contained in the terms of the contract of insurance provided to the policy owner. During the period of time that a policy is within the grace period, premiums received must be accepted, keeping the policy in force without condition and the policy owner and the insurer may not declare the policy lapsed or terminated. Should the insured die during the grace period, the insurer must pay the policy benefits. The addition of this grace period was required either by way of endorsement or by use of an appropriately-approved policy form.

51. Second, the Statutes mandate that no policy may lapse or be terminated until and unless the insurer mails, by way of first-class mail, a 30-day

3:21-CV-01415-H-KSC

warning notice, not only to the policy owner, but also to any assignee, any person with interest in the policy, and a designee, if any, previously selected by the policy owner to receive such notice.  The notice may only be mailed after the initial premium is due and is unpaid and must be an accurate description of the status of the policy. A notice that is not mailed to all of the required recipients, consistent with the Statutes' requirements, is void and legally ineffective. Pursuant to other Insurance Code requirements, proof of this mailing and the content of that mailing must be maintained by the insurer. See Ins. Code Section 10508.

52. Next, every "applicant" for life insurance must be notified of its right to designate an individual to receive the 30-day notices provided by the Statutes prior to the issuance and delivery of the policy. This notice must then be provided annually to the named policy owner. In any "application" process, including applications for reinstatement, conversion or any modification or change in a contract, the insurer is mandated to provide the applicant notice of the right to have a secondary addressee. It does not matter that a prior application process included such a form. "Every" applicant is required to be provided this form. The insurer is mandated to then advise the named policy owner of the right to select and/or change the designee.  This requirement is not lessened for any reason. And compliance with this provision is not excused because of any conduct by the named policy owner. The final requirement of the Statutes is perhaps the most important--under the terms of the Statutes, no insurer may lapse or terminate a life insurance policy for nonpayment without first strictly complying with all of these provisions. Failure to comply with all of the notice and grace provisions voids any attempted termination or lapse as a matter of law until and unless there has been compliance. If these provisions are not strictly complied with, then the termination of the agreement is not

effective and the promises made by the insurer remain. All of the conditions found in Insurance Code Sections 10113.71 and 10113.72 are mandatory. See Ins. Code Section 16.

53.    In sum, until and unless the provisions of Sections 10113.71 and 10113.72 are strictly complied with, an insurer cannot terminate, lapse, or treat as no longer in force, any life insurance policy. Nor can an insurer refuse to accept premiums and continue providing coverage, based on the provisions of the policy. When an insurer fails to strictly comply with the Statutes and the death of the insured later occurs, the promises made by the insurer to pay the policy benefits remain binding. The policy remains effectively "in force" and not terminated. And when an insurer fails to strictly comply with the Statutes and the insured remains alive, until death occurs, the insurer remains obligated to continue providing coverage under the terms of the policy. The insurer is not allowed to recover any Unearned Premiums for the period of time when the policy was disavowed, repudiated or considered terminated or without value.

## D.  UNITED'S VIOLATIONS OF LAW INVOLVING IMPROPER TERMINATION OF LIFE INSURANCE CONTRACTS

54.    In 2012, Defendant was made aware of the drafting and enactment of the Statutes, then designated as "AB 1747." Defendant knew that the Statutes would mandate the provision of new notices and extension of grace periods to effectively terminate any life insurance policy for nonpayment of premium. Prior to enactment, Defendant made no attempt to object to the enactment of the Statutes. After AB 1747 was signed into law and designated as Insurance Code Sections 10113.71 and 10113.72, Defendant decided not to comply with them.

55.    Defendant's decision to not apply the Statutes to in-force policies issued or delivered prior to January 1st, 2013, was not based on any internal or

external legal analysis, on any discussion with any of the drafters of the Statutes, or on any formal opinions, rules, decisions or formal guidance from the California Department of Insurance.

56. The decision was further in contradiction of the original opinions of the ACLI and ACLHIC, which advised Defendant in September of 2012 that the Statutes should be applied to policies in force on or after January 1st, 2013, regardless of the date of issuance. Defendant rejected these opinions in whole or in part because – and motivated by the knowledge that - application of the Statutes would cause Defendant to suffer the loss of financial gain that it was enjoying from unintended lapses and terminations. Defendant, at that time, understood that lapse of an insurance policy provided an opportunity for Defendant to cease coverage and gain full, unencumbered access and use of premiums which had accumulated prior to termination. Indeed, upon lapse, insurance companies like Defendant are allowed to release state mandated financial "reserves" for the policy.

57. Unfettered capacity to lapse policies also allows Defendant to potentially re-underwrite the risk by requiring new examinations for purposes of either eliminating a policy altogether or requiring higher or different policy terms through the reinstatement processes. For many of Defendant's products, the Statutes would for the first-time mandate actual pending lapse notices, thereafter preventing termination of policies because of little or no notice to the policy owners. Prior to this time, Plaintiff is informed and believes that notice provisions contained in many of Defendant's policies were limited, vague, and not subject to any regulatory control.

58. Defendant also wanted the capacity to create a perceived need for unnecessary reinstatements, which provided United a further way to improve its risks of loss and make more profit. Such unintended lapses would also allow Defendant to condition reinstatements by demanding

3:21-CV-01415-H-KSC

payment of Unearned Premiums. This enhanced United's capacity to receive premiums for periods of time when the risk was neither reserved or United was potentially at risk of having to pay a claim. United required not only payment of Unearned Premiums, but also representation that the insured was still alive at both the beginning and end of the reinstatement process. This subtle requirement allowed United to keep the premiums tendered by the policy owner while undergoing the process for reinstatement, while United actually incurred no risk. In Ms. Nieves' case, had her reinstatement been accepted, she would nonetheless have been paying premiums for months, when, in fact, pursuant to United's view, she had no insurance in force.

59.    Additionally, a reinstated policy is not as valuable as it was prior to reinstatement, as a new contestability period arises and is imposed on the insured. See Ins. Code Section 10113.5. A "reinstated" policy is in fact a less valuable policy.  United does not explain any of this to its customers.

60.    United also did not want its lapse and termination capacities to be lessened, because, through this process, United was able to cull-out insurance on insureds whose health conditions had deteriorated or had not been revealed during the initial underwriting process. Through the reinstatement process, United was able to require new underwriting and new consideration of the premium being charged or could even decide not to continue the relationship at all, while retaining the premiums paid to date. In a very real way, any lapse or termination opens up the opportunity for an insurer to renegotiate the entire contract.

61.    In sum, a (wrongful) lapse puts an insurer in an enormous advantage over a policy owner, who, in many instances, may not be able replace the coverage due to the passage of time and likely a change in the insured's health. Combined with the fact that these are adhesion contracts, a lapse

termination, especially for the elderly or disabled, raises enormous danger to the investment of the policy owner, but is an opportunity of gain to the insurer. And that danger would increase exponentially if the policy owner or vested beneficiary was kept in the dark about the true status of the law and the policy.

62. For these and other reasons, in the fall of 2012, Defendant did not believe it would economically benefit from application of the Statutes to all of its in-force policies. United decided at this time to whenever possible restrict the implementation and application of the Statutes to any life insurance products within the state of California.

63. The California Supreme Court has now eliminated any doubt that the Statutes apply to *every* life insurance policy of any form as of January 1st, 2013. See Ins. Code Section 10113.71(c). Despite this clarity, United has treated policies differently, based on their date of issuance, the type of policy, or other irrelevant metrics. At bottom, United has systematically failed to comply with the Statutes' requirements.

64. United's violation of the Statutes is substantial. Specifically, United has not strictly complied with the Statutes regarding:

   a. Policies issued or delivered in the state of California prior to January 1, 2013. For these policies, United has failed to comply with the Statutes in any way.

   b. Policies issued or delivered prior to January 1, 2013, which have renewed, modified, converted, reinstated, or otherwise continued in force through payment of premium after January 1, 2013. For these policies, United has failed to comply with the Statutes in any way.

   c. Policies that were issued or delivered *after* January 1, 2013. For these policies, United has also failed to comply with all aspects of the Statutes.

65.    More specifically, United's failures have included:

    i.    Failing to offer a right of designation to all "applicants" for various forms of life insurance. United has limited the utilization of this process at most to entirely new applicants and has not offered such forms to other forms of life insurance applicants, such as applicants for reinstatement, conversion or other forms of policy change involving application; and/or

    ii.    Failing to provide full 60-day grace periods contained in the policy by either not actually attaching or making the grace period a physical part of the policy provided to the policy owner, improperly advising policy owners and/or claimants of the wrong grace period, not accepting premiums without conditions during the grace period or inaccurately declaring a policy terminated prior to the expiration of the grace period, which amounts to a repudiation of the policy; and/or

    iii.    Failing to mail accurate 30-day pending lapse notices either by inaccurately describing the actual grace period, by failing to mail to those recipients the notices required by law and/or by providing insufficient time periods as required by law; and/or

    iv.    Failing to provide annual notifications to policy owners of their rights to designate; and/or

    v.    Failing to apply the mandates of the Statutes as an absolute condition for termination of any policy for nonpayment of premium and instead excusing noncompliance based on the inaccurate perceived fault of the policy owner or other irrelevant grounds or justification; and/or

    vi.    By treating policy owners directly and indirectly as if they were in default for payment of premiums, when in fact, in

every instance, United first violated the terms of the policy and/or Statutes prior to any actual default by any policy owner; and/or

vii.    By demanding, on policies illegally terminated and repudiated, payment of Unearned Premiums to effectuate and, as a condition imposed on the policy owner, any form of continuation of coverage through revival, reinstatement, conversion or other form of ongoing insurance; and/or

viii.   By continuing to conceal from policy owners, beneficiaries, and others with legal interest in wrongfully terminated policies, United's failure to comply with the Statutes.

66.    Plaintiff is further informed and believes that United has failed to institute appropriate training and education of its sales and underwriting staff, as well as its claims personnel and others, whose knowledge of these rules is essential for United's operation. By 2021, United's personnel still do not understand the legal effect of failing to comply with the Statutes' mandates. Plaintiff is informed and believes that additional violations of the Statutes have also occurred, which will be disclosed during this litigation.

## E.  UNITED'S CONDUCT HAS INJURED SCORES OF CONSUMERS

67.    United's continued disregard for the law is widespread. In many instances, insureds have lost all reasonable access to any insurance at all. Further, thousands of policy owners have been forced to pay premiums which were not required to be paid and similarly numerous beneficiaries have been denied payment of policy benefits. This improper conduct and receipt of Unearned Premiums and the withholding of benefits continues today.

68.    From 2013 until the present, United has received payment of premiums and other forms of consideration from policy owners who have paid policy

3:21-CV-01415-H-KSC

premiums which were not owed, which were excessive, and which United unlawfully demanded from named policy owners who were wrongfully and fraudulent told that such premiums and other consideration were contractually and statutorily necessary for revival and/or reinstatement of their policies. Today, Defendant holds millions of dollars of unearned and wrongfully obtained premiums, as well as policy benefits, owed to hundreds of beneficiaries, relating to policies where the insured has died and policy benefits are owed to beneficiaries of policies. Today, even after *McHugh*, United is still advising thousands of injured policy owners that, to revive their contracts with United, they must first tender premiums for periods of time when, according to United, no insurance was in force and no claim would have been paid. Also, today United is still denying the payment of claims on policies which United knows involve deceased named insureds, thus requiring steps to be taken to contact beneficiaries for purposes of payment of benefits. Today, United is maintaining and retaining premiums and benefits owed to policyowners, with knowledge that such retention is wrongful.

69.   Today, United is advising its personnel that, despite violations of the Statutes, if a policyowner cannot prove "harm" resulting from United's misconduct, the policy promises will not be honored and, that only through retention of counsel, suit, and a full, lengthy jury trial, will any benefits be paid under the policy or will the policy owner be allowed to continue with its coverage fully in force.

70.   The harm, damages, and the need for appropriate legal and equitable relief is widespread and substantial, but it is all tied to a simple singular injury-- a wrongfully-terminated life insurance policy.

### F.  FACTS CONCERNING PLAINTIFF'S POLICY

71.   Plaintiff Marilyn Nieves' experience with United is representative of

United's ongoing course of misconduct and noncompliance with the Statutes. Plaintiff's personal dealings with United have involved past and current violations of every material aspect of the Statutes and show an ongoing pattern by United of disregard for the obligations imposed by the Statutes.

72. In June of 2016, Plaintiff purchased a $30,000 whole life policy from United, insuring the life of her then minor son, Michael Nieves, who suffers from autism. *See* **Exhibit "A."**

73. Ms. Nieves was listed as the sole beneficiary of the policy. The policy was initially issued and then delivered in California after January 1, 2013. Had

74. The policy required a level premium of $224.40 annually, with a maturity date of June 6, 2100. The policy also specified that premiums could be paid quarterly, or monthly.

75. The policy contains a "Grace Period Amendment Rider," extending the contractual grace period from 31 days to 60 days. The rider further promises: "We will mail a notice of lapse to your last known address and any named secondary addressee. We will mail the lapse notice at least 30 days before the policy lapses."[2]

---

[2] Prior to suit, over a period of many months, Plaintiff and her counsel requested all documentation regarding the purchase of the policy. Defendant failed to produce any proof of any provision to Plaintiff of the original required notice to the applicant advising of a right to designate a secondary addressee. However, after suit was filed and served, Defendant purportedly produced a copy of a document purporting to be such a right to designate. Plaintiff has no copy of the purported document. It is not contained in the original policy documents as part of the original application. And this portion of the application was not attached or made a part of any policy. Finally, the document requests that Plaintiff herself be the secondary addressee for any notices. Plaintiff has no recollection of receiving an explanation of the substance or content of such a document. Defendant has produced no explanation for the failure to provide the document to Plaintiff at the time of application, the form's patently inaccurate completion, or why the document was not provided to Plaintiff and her counsel in response to the numerous requests. Nor has Defendant advised when and under what circumstances this document was found. Clearly, it was either withheld or concealed prior to the filing of the Complaint and its production did not occur until after removal and in conjunction with United's now defunct Motion to Dismiss. Finally, assuming the document is valid, it is also without dispute that

25

76.     After issuance of the policy in 2016, Plaintiff was never advised of her right to designate a secondary addressee on an annual basis pursuant to Insurance Code Section 10113.72(b). Again, at no time in 2017 or 2018 was Plaintiff provided any information regarding her rights to a secondary addressee required by Section 10113.72(b).

77.     To administer the payment of premiums, Ms. Nieves set up an automatic monthly draft from her bank account. Premiums were timely paid by this method until February of 2018, when an automatic payment was returned. On March 16, 2018, Ms. Nieves received a notice from United that her payment due February 6 was returned. In response to the letter, Ms. Nieves provided a new payment authorization for automatic payments and requested that United deduct the premiums due on April 2, 2018.  On March 26, 2018, United confirmed receipt of her payment authorization by letter.

78.     Despite authorizing the deduction of the premiums to take place on April 2, 2018, on April 6, 2018--less than 60 days from the premium due date-- United sent Ms. Nieves a notice indicating that payment for the February premium had not been received and, as a result, the coverage had terminated. No notice was sent to any designee and the Designation form, purportedly presented by Plaintiff at the time of the application, did not generate or cause any notice to Plaintiff. Defendant is not actually sending notices to secondary addressees.

79.     This was an unlawful termination of her policy by United. This notice was not a notice of pending lapse or termination. Rather, it was a notice that a termination had purportedly *already occurred*. These acts constituted

Ms. Nieves, as the named secondary addressee entitled to notices of pending lapse, was not mailed the notice. There is no evidence that United sent the second notice which would have been required and, as such, United has actually admitted its failure to comply with Insurance Code Section 10113.71(b)(1), as well as Section 10113.72(c). Further, there is no evidence that in 2017, 2018, or 2019, Ms. Nieves was provided notice of this designation right.

3:21-CV-01415-H-KSC

violations of the Statutes--Sections 10113.71(b)(1) and (3) and 10113.72(c). As such, this acted as a repudiation of the policy. As part of United's scheme to collect Unearned Premiums, Ms. Nieves was told that, as a condition of seeking reinstatement, she had to pay premiums for the period of time that United had declared her policy void, without value, and, had the insured died, no coverage was in effect.

80.    Days later, after learning of the situation, Ms. Nieves contacted United and requested reinstatement of the policy. United represented that such a request for reinstatement was required to revive the policy and that, unless and until Ms. Nieves took this step, she could not obtain a reinstated or revived policy.

81.    On April 16, 2018, United acknowledged this request by letter and provided an Application for Reinstatement. The application requested detailed medical information, as well as payment of premiums which Ms. Nieves understood would be held by United. Ms. Nieves provided the completed Application for Reinstatement, along with payment of premium for the period of time when United considered the policy lapsed and terminated. United accepted this premium, held the premium during the time it considering the requested reinstatement, and Michael Nieves remained uninsured. United never informed Ms. Nieves of any of her rights under the Statutes and actively concealed this information from her. Ms. Nieves was unaware of her rights under the Statutes, the fact that her termination was improper, and that no reinstatement at all was necessary. On information and belief, United released all reserves on this policy and now had unfettered access to all policy premiums paid to date.

82.    During this process Ms. Nieves understood and believed that completion of this reinstatement procedure was necessary to cure the purported default in the policy. Ms. Nieves did not know the full nature of the issues and did not

believe that she could legally file suit or take action until this process was completed. The demand by United was improper.

83.  On May 7, 2018, United asked Plaintiff to sign the reinstatement application and have the insured, Michael Nieves, sign and date the application as well. Both signed and returned the application, which was received by United on May 18, 2018. It is uncertain why Mr. Nieves was required to sign an application. During this application process, United again violated the provisions of Ins. Code Section 10113.72(a) by failing to provide Plaintiff, again an "applicant," with a right to designate.

84.  On June 8, 2018, United, by letter, confirmed its ongoing repudiation of the contract and denied reinstatement "based in part on pharmaceutical information we received." The pharmaceutical information provided by Ms. Nieves indicated Michael was taking medication to treat autism. But Michael's autism existed as of the date the policy had been *originally* issued. This is an example of "post-lapse underwriting." United uses lapse scenarios as opportunities to rewrite and renegotiate policies and cull from its pool of insureds those individuals who had health issues that were less acute, or that United had not fully appreciated, at the time of the original underwriting.

85.  As of June 8, 2018, United and its personnel had the Nieves termination and reinstatement request in its possession for at least three months. At no time did United advise Ms. Nieves that her policy had not actually been legally terminated and that this entire process was improper and unnecessary. This refusal was also a violation of the provisions of Ins. Code Section 10113.5 and was an attempted termination for reasons other than nonpayment of premiums.

86.  Plaintiff is informed and believes that, during this time, United considered the policy finally terminated and not in force. Had death of the insured

3:21-CV-01415-H-KSC

occurred, United would have treated the policy as having no value. The continuing assertion that the policy had terminated was a patent error, given United's noncompliance with the Statutes. At this time there was absolutely no dispute concerning the application of the Statutes to policies issued after January 1st, 2013.

87.   At the conclusion of the denial of reinstatement, United again improperly informed Ms. Nieves that the policy had terminated and failed to provide Ms. Nieves any information concerning the numerous statutory violations which occurred as of that date. In fact, the policy was effectively in force, as were the promises by United.

88.   Further, this response was intended to conceal from Plaintiff her legal rights. United consciously chose not to advise Plaintiff of the running of any potential statute of limitations. United tailed to tell Ms. Nieves, as United was required to do, that she had a right to contact or obtain assistance from the California Department of Insurance.

89.   In late 2020, Ms. Nieves had to contact and retain counsel for assistance. To obtain this assistance, Ms. Nieves was required to relinquish certain rights to policy benefits and was further required to incur various costs and expenses.

90.   Between September 3, 2020, and the filing of the original action, Ms. Nieves, by and through her counsel, made more than a dozen requests and inquiries that United reconsider its assertion that the policy had been properly terminated. During the time these numerous requests were made, United was advised of the Statutes and Ms. Nieves again demanded revival of the policy and acknowledgement that the policy had been improperly terminated and was in fact still in full force and effect. United refused these requests.

91.   By letter of March 25th, 2021, United contended that all notices and

communications with Ms. Nieves had been turned over. But the documents provided did not contain 30-day notices, no accurate or completed right to designate either in the application for insurance or afterwards, and no other information demonstrating compliance with the Statutes. This proved United's general business practice of ignoring and misapplying Sections 10113.71 and 10113.72 as well as other mandatory regulatory provisions.

92. Finally, in May of 2021, United admitted that it had erred in declaring Ms. Nieves' policy as having been properly terminated. Rather than revive the policy in a manner consistent with the law and the terms of the policy, United, again in violation of the Statutes, continued to insist that the policy required payment of premiums--now nearly two years of premiums--from the date of the repudiation to "reinstate" the policy. Even after admitting the policy had been wrongfully terminated, United continued its violation and disregard of the Statutes' mandates, which clearly and explicitly made void and legally insufficient the initial termination.

93. Ms. Nieves was forced to file her original complaint on July 6th, 2021 in California Superior Court. Despite receipt of the Complaint, United made no effort to contact Plaintiff or her counsel, and no effort to waive or unconditionally revive and acknowledge the legitimacy of Plaintiff's coverage. Instead, United removed the action to federal court.

94. After removal, United then, on the advice and reliance of counsel, communicated to Plaintiff that United would finally unconditionally reinstate the policy and waive any demand for payment of prior premiums. Again, United failed to acknowledge that the policy had never been legally terminated. Further, United failed to provide the same "waiver" for the putative Class members referenced in the Original Complaint or address any of the claims of injury outlined in Plaintiff's Original Complaint. Further, United refused to admit that in fact no premiums were due for this

period of time, and that this was not a "waiver" by United, but rather an admission that its prior conduct was illegal.

95.   This "offer" was not legitimate and was motivated as part of a strategy by United to argue that Plaintiff, a policy owner whose policy had been repudiated for years, had not suffered any significant financial injury or damage, and, as such, she should have no right to prosecute any claims on her own behalf or the behalf of others. The "offer" was timed to coordinate with a planned Motion to Dismiss.

96.   In response to United's "offer", Plaintiff reasserted the allegations of her Original Complaint and advised that she would tender premiums to United pursuant to the policy requirements for continuing the insurance on specific conditions. On August 11, 2021, Plaintiff advised, by way of letter, that:

> Payments will be made **upon the express condition and understanding that Ms. Nieves' payment of future policy premiums is not a waiver, express or implied, of her claims for relief arising from the prior improper termination of this policy**, which are the subject of the pending litigation. **As such, United should not accept such payments if it has any intention of suggesting that the disputes and claims raised in the pending action have in any manner been resolved. Specifically, United should not assume that Ms. Nieves' decision to begin payments again constitutes any form of settlement, resolution, or relinquishment of her claims for injuries and damages asserted in her current action.**
>
> **To the contrary, Ms. Nieves is treating United's agreement to revive the policy, waive its prior assertions that the policy had terminated, and alter its prior demand for payment of premiums, as an admission of its wrongful prior termination of the policy**. While United need not agree with this assessment of its decision to alter its pre-suit positions, we respectfully remind United of its ongoing obligations of good faith and fair dealing owed to Mrs. Nieves, despite the pendency of litigation. See *White vs. Western Title*, 40 Cal.3d 870 (1985)." [Emphasis added.]

**Exhibit "B."**

97.   United, always represented by counsel, chose not to respond to Plaintiff's letter. Plaintiff received no response to the letter, relying on the clear acquiescence of Plaintiff's waiver/reservation of rights and conditions. Plaintiff made a premium payment consistent with the policy terms and completed a new third-party designation. Plaintiff's premium payment was received and accepted by United without objection or condition.

98.   Despite its acquiescence, on September 13, 2021, United moved to dismiss Plaintiff's Original Action and improperly and inaccurately argued to the Court that, at the time Plaintiff filed her Original Action, Plaintiff's policy had been fully revived and that as such Plaintiff's claims of injury, damages were false and not substantiated. (See ECF Doc. 14, pp. 17-20.) The motion contained a number of false and unsupported statements, including the assertion that Plaintiff's Original Action had been filed when the policy had in fact been revived and when Defendant had agreed to revive the policy. This was not true. In fact, when the Original Action was filed, Plaintiff's policy remained repudiated and United was continuing to demand payment of Unearned Premiums to "reinstate" the policy. In its Motion to Dismiss, United failed to explain that the revival of the policy had only been made after the filing of the Original Action, removal of the action to District Court, and that Plaintiff had only begun to make premium payments on the express, unobjected agreement and condition that the assertions made in the motion would not be made. The Original Action was filed on July 6, 2021. United's "offer" to reinstate the policy without the payment of Unearned Premiums was made on July 23, 2021. The motion also improperly asserted that, as of the date of the filing of the Original Action, as well as the filing of the Motion to Dismiss, there existed no conflicts between Plaintiff and United concerning the applicability of the Statutes and the actual status of the Plaintiff's policy. The motion also asserted that Plaintiff would not

agree to amend her Original Action. This was also not true. Plaintiff advised that amendment was likely and asked that the Motion to Dismiss not be filed until discovery was completed. The motion also wrongly asserted, without evidence or facts, that no legal issues still existed. This, again, was not true. Substantial issues remain.

99.  As of the date of the filing of the Original Action, United had violated every single provision of the Statutes in relation to Ms. Nieves' policy. It had repeatedly illegally declared the policy void, terminated and without value. It had illegally collected or attempted to collect Unearned Premiums. Initially, United failed to provide Ms. Nieves proper notice when her status was that of an "applicant," in violation of Ins. Code Section 10113.72(a). United then, in 2017 and in 2018, violated Section 10113.72(b) by not annually notifying her of a right to designate. United terminated Ms. Nieves' policy without compliance with the provisions of Ins. Code Section 10113.71(a), which mandates a 60-day grace period. United also failed to provide notices, as required by Ins. Code Section 10113.71(b)(1) and (3). No notice was sent to the policy owner and no notice was sent to the designee, due to United's previous violations and failure to provide the right to designate at the time of the sale of the policy and during the two years the policy was in force. See Ins. Code Section 10113.72(b).

100.  All these violations occurred prior to Ms. Nieves being in default or even reaching the end of her statutory and contractual grace period. Ms. Nieves had done nothing contrary to the terms of the policy but was being treated by United as a party in default.

## G.  THE HARM TO MS. NIEVES

101.  Each of Defendant's violations was a material violation of law and a material breach and repudiation of the policy, thereby excusing any further performance by Ms. Nieves to tender premiums to maintain the policy in

force, and any imposition by United of any requirements or conditions. United was in contractual breach and remained in breach of the policy at all times from at least April 6, 2018, until the date of this filing. As a result of each and every violation, there was harm and injury to Ms. Nieves. This harm and injury continued throughout the period of time when the policy was deemed terminated.

102. When Ms. Nieves' request for reinstatement was denied, she avoided one trap set by United, but for a period of two years was then denied the benefit of her initial bargain with United. That bargain not only promised that United would pay in the future when and if her son died, but that bargain also included United's promise to keep offering this insurance without need of further underwriting and on the same conditions as originally set. During these two years, Ms. Nieves was not able to reasonably obtain alternative coverage, having had a policy application denied due to her son's health. Combined with what appeared to be a termination resulting from her mistakes, alternative insurance was unavailable to Ms. Nieves. Ms. Nieves was denied the benefit of her bargain with United and would have been entitled to rescission and payment of her past premiums had she been aware of the Statutes, but for United's continuing concealment from United policy owners.

103. After spending her own time and efforts to deal with this issue, ultimately Ms. Nieves retained counsel. This retention required Ms. Nieves to impair her rights under the policy not only as a living policyowner, but also ultimately as a vested beneficiary. Further, Ms. Nieves was required to PAY costs and expenses and undertake significant commitments to possibly obtain her coverage.

104. After months of requests by counsel on her behalf to simply revive the policy, and to obtain revival of her policy, as well as present the claims of

fellow policy owners, suit was filed. In this suit, Ms. Nieves assumed the responsibilities and liabilities as a potential Class representative. Agreeing to provide representation not only for herself but for fellow Class members, Ms. Nieves has in no fashion been individually made whole and continues to suffer detriment and harm arising from United's misconduct.

105.    Thus, as of the date of the filing of her Original Complaint, and until at least the date of her first conditional premium payment, Ms. Nieves' harm was the loss of valuable and irreplaceable insurance and the economic and noneconomic benefits she derived from its existence. Now the policy having been conditionally revived, Ms. Nieves' harm remains tangible and uncompensated, including the impairment to the value of the revived policy and the incurring of other costs and expenses. Despite the "offer," Ms. Nieves still has been denied the real benefit of the bargain struck with United in 2016.

106.    Today, Ms. Nieves may have finally revived the policy insuring her son's life, but she has not been compensated in any fashion for the harm of the termination and had to go to extraordinary lengths to obtain a revival of her policy. Significant disputes continue to exist between United and Ms. Nieves. United still maintains that it was entitled to Unearned Premiums and is only "waiving" these claims as to Ms. Nieves alone. United is also now contending that, by agreeing to United's "offer," Ms. Nieves has waived her rights to seek any compensation on her own behalf or on behalf of the Class. United continues to insist that the policy has gone through a "reinstatement," thus creating a new contestability period it did not have before. Thus, today Ms. Nieves has in no fashion been made whole and has demonstrably been denied the full benefit of the original bargain with United.

107.    Finally, Ms. Nieves remains legitimately concerned that, in the future,

United, which has demonstrated no remorse or change in its procedures, remains posed to ignore the mandates of the policy regarding termination and lapse, not only as to Ms. Nieves, but as to other policy owners. Based on more than five years of dealings with United, during which United never properly complied with the Statutes, Ms. Nieves is still concerned, not only on her own behalf but on the behalf of others, that United will continue to act with a disregard for these laws and her rights, both express and implied, under its policies.

## IV.  CLASS ACTION ALLEGATIONS

108.  Defendant has not, since at least January 1, 2013, properly and fully complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72. Plaintiff now asserts her claims on behalf of herself and all members of the proposed Class, as follows:

**The Class:**

All vested owners of Defendant's individual life insurance policies that were renewed, issued, or delivered by Defendant in California, and which, subsequent to January 1, 2013, underwent lapse or termination for nonpayment of premium without Defendant first providing all of the notices, grace periods, and offers of designation required by Insurance Code Sections 10113.71 and 10113.72. Plaintiff excludes from the Class all the certified class members in the case of *Bentley v. United of Omaha*. Specifically, Plaintiff excludes the following:

> All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued, or delivered by United of Omaha Life Insurance Company ("Omaha") in 2013 in the state of California that lapsed or were terminated by Omaha for the nonpayment of premium after January 1, 2013 (and which were not affirmatively cancelled by the policyholder), and as to which policies one or more of the third-party notices described by Sections 10113.71 and 10113.72 of the California Insurance Code were not sent by Omaha prior to lapse or termination. *Bentley v. United*

36

*of Omaha Life Ins. Co.* (C.D. Cal. May 1, 2018, No. CV 15-7870-DMG (AJWx)) 2018 U.S. Dist. LEXIS 117107, at *33.)

109.  Plaintiff reserves the right to amend and/or modify the definition of the Class as necessary upon completion of discovery. For purposes of the current Class description, the phrase "vested owners of Defendant's individual life insurance" refers to the named policy owner of the policy as of the date of the purported termination of the policy for nonpayment of premium and includes, upon the death of the named insured, the named beneficiary thereafter entitled to enforce the terms of the policy. See *Boldemann Chocolate Co. v. Price*, 5 Cal.2d 200, 201-02 (1936). In this action Plaintiff is the current owner of the policy and will, upon the death of the named insured, be the beneficiary.

110.  ***Numerosity.***    The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds and perhaps thousands of members. The precise number of members is unknown to Plaintiff. The true number of members is known or ascertainable by Defendant, as are their identities. Thus, Class members may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

111.  ***Existence and Predominance of Common Questions and Answers of Law and Fact***.  There is a well-defined community of interest in the questions and answers of law and fact involved affecting Class members. The questions and answers of law and fact common to the Class predominate over questions and answers affecting only individual Class members, including, but not limited to, the following:

a.  Whether Sections 10113.71 and 10113.72, in whole or in part, apply to Defendant's life insurance policies;

3:21-CV-01415-H-KSC

b. Has Defendant violated and continued to violate the provisions of Sections 10113.71 and 10113.72?;

c. Do Insurance Code Sections 10113.71 and 10113.72 mandate a strict compliance standard of compliance or is compliance by proof of "substantial performance" sufficient?;

d. Is Defendant continuing to refuse to provide the protections afforded by the provisions of Sections 10113.71 and 10113.72?;

e. Whether Defendant's life insurance policies have been ineffectively lapsed or terminated or subsequently been unnecessarily modified through reinstatement;

f. Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendant's failure to comply with the Insurance Code?;

g. Should Defendant be required to make payments to beneficiaries of policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?;

h. Is United entitled to payment of Unearned Premiums prior to a reinstatement or revival of any policy improperly terminated?;

i. Is United required to release or reimburse policyowners who have paid Unearned Premiums arising from United's wrongful termination of a policy for nonpayment of premium?;

j. Under what conditions must United comply with the terms of a policy in payment of claims to vested beneficiaries regarding policies that have wrongfully terminated?;

k. Is United required to require revival of previously unlawfully terminated policies, without tendering of unpaid premiums?;

l. Is a policy, revived after an illegal termination, a "reinstatement" for purposes of Insurance Code Section 10113.5(a)?; and

3:21-CV-01415-H-KSC

112. ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and each member of the Class were victims of violation of the same statutory provisions, resulting in the assertion by United that the policies terminated for nonpayment of premiums. Plaintiff suffered harm when her policy was terminated and suffered every form of actual or potential harm arising from violation of the policy, save in her capacity as a putative vested beneficiary. Every Class member shares claims arising from either all or some of the same statutory provisions contained in the statute. Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of The Statutes.

113. ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interest adverse or antagonistic to that of the Class.

114. ***Superiority***. A class action is a superior method for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system

3:21-CV-01415-H-KSC

from the issues raised by this action. The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class members remain unaware of their rights and, without this Class action, would remain unaware of their rights and benefits.

115.    In the alternative, the Class may also be certified because:

(a)    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

(b)    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

116.    Unless the Class is certified, Defendant will retain monies received because of its conduct against Class members and Plaintiff. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and members of the Class will continue to be harmed.

117.    Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a Class Action. Because the action is brought as a Class Action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

118. Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action. These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the Class.

### V.    FIRST CAUSE OF ACTION

**FOR DECLARATORY JUDGMENT OR RELIEF**
**(CAL CIV. CODE § 1060, *ET SEQ.*)**

**(By Plaintiff, Individually, and on Behalf of the Class)**

119. Plaintiff incorporates by reference each and every allegation contained above.

120. Plaintiff, in her individual capacity, as well as in her representative capacity, brings this action individually and on behalf of all members of the Class.

121. Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," maintain a complaint or cross complaint "for a declaration of his or her rights and duties." Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Code § 1060.

### A.    Basis for Relief

122. On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately and thereafter read into all in-force policies, regardless of the date of issuance. The provisions were further intended to require

3:21-CV-01415-H-KSC

123. compliance in all policies that came within the jurisdiction of California, including, but not limited to, policies that renewed or in somehow continued in force on or after January 1, 2013.

123. These Statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from nonpayment of premiums which may occur from the date of enactment and thereafter.

124. The amendments were not intended to relieve or waive a policy owner's continuing obligation to pay premiums, but operated to keep the policy and the promises made by insurers in force until the policy was properly lapsed or terminated, consistent with the statutory provisions which were incorporated into the terms of the policy by law. Each of these statutory requirements was intended to stand alone.

125. Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Ins. Co. v. Norton*, 96 U.S. 234, 242 (1978). "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F. Supp. 1183, 1188 (N.D. Cal. 1996).

B.    **There Exists an Actual Controversy Requiring a Declaration of Rights and Duties**

126. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties under the California Insurance Code and the policy.  Plaintiff contends that Sections 10113.71 and 10113.72 apply to the subject policy, as well as to all of Defendant's California life insurance policies in force as of or after January 1, 2013,

42

including any policies that were renewed in California on or after January 1, 2013. Plaintiff also contends that these Statutes, as well as Insurance Code Section 10111, govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter. Plaintiff contends the Statutes further mandate the legal effect of noncompliance with the Statutes and the parties' ongoing contractual obligations. Defendant contends that Sections 10113.71 and 10113.72 do not apply to many categories of its policies, including any policies in existence before January 1, 2013, and Defendant contends that the Statutes do not affect the parties' ongoing contractual relations, despite Defendant's noncompliance with the Statutes. These and other issues remain and require judicial determination.

127. Plaintiff contends that the violations of the Statutes, as described herein, all invalidate and void any attempts to terminate the subject policies and/or act as and amount to a repudiation of those policies.

128. Plaintiff contends that United may not terminate Plaintiff's current, in-force policy without strict compliance with the Statutes.

129. United denies such obligations or the effects of these violations. The dispute is immediate, not uncertain, and will serve the purpose of allowing Plaintiff and Class members to fully understand the requirements imposed by the Statutes.

130. Plaintiff contends that the violations of the Statutes do not allow United to condition or refuse further compliance with policy promises not otherwise strictly provided by the terms of the contracts and do not allow United to refuse continuation of coverage by a policy owner's tendering of Unearned Premiums (premiums allegedly owed for periods of time subsequent to United's unlawful termination).

131. United contends it is still contractually and legally entitled to payment of

3:21-CV-01415-H-KSC

premiums purportedly incurred after United's purported termination before any revival, reinstatement, or continuation of coverage.

132.   Plaintiff desires a judicial determination of these rights and duties and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including the subject policy, as well as that Plaintiff's policy was illegally terminated and that Defendant held no contractual or statutory right to demand payment of Unearned Premiums to revive the policy. Plaintiff also desires a judicial determination that her policy did not become contestable by virtue of the improper forced "reinstatement." *See* Cal. Ins. Code. § 10113.5.

133.   A judicial declaration would advise insureds, like Plaintiff, and then vested beneficiaries of their rights and would advise Defendant of its duties to Plaintiff and to Class members concerning policy owners' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period. A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## VI.    SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

**(By Plaintiff, Individually and on Behalf of the Class)**

134.   Plaintiff incorporates by reference each and every allegation contained above.

44

3:21-CV-01415-H-KSC

135. In each policy of insurance in force on or after January 1st, 2013, United had made a basic promise and assumed a contractual duty to pay the policy benefits to the named beneficiary upon the death of the named insured. Additionally, to effectuate that promise, in each United policy of insurance in force on or after January 1st, 2013, United had agreed to offer to continue providing that coverage by agreeing to accept set and non-negotiable payment of premiums and consideration. United also expressly and impliedly promised that the administration of the policies would comply with the laws and regulations of the state of California. Included in these duties, United, as to Plaintiff's policy and every Class member's policy, included an obligation to comply with the provisions of the Statutes, as well as other provisions of the Insurance Code, including Sections 10111; 10113.5 and 10508. As of January 1st, 2013, each and every contract of life insurance for Plaintiff and Class members could not be legally terminated without compliance with these laws and the terms of the policies. These were the basic promises and duties assumed by United in Plaintiff's policy and every other Class member policy.

136. As of the date of the filing of Plaintiff's Original Action, Defendant has violated and breached these basic duties and obligations and has failed to continue to accept premiums and provide coverage. And where a death has occurred, United has failed to comply with the promises of the policy to pay the benefits to the beneficiary. Defendant had repeatedly breached and repudiated the existence of Plaintiff's policy, as well as Class members' policies, and continues to threaten to breach the express terms of its life insurance policies by, amongst other things:

   (a)    Failing to include in such policies and/or failing to provide 60-day grace periods for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

45

(b)      Lapsing and/or terminating policies before expiration of the 60-day grace periods;

(c)      Failing to include in such policies and failing to provide accurate 30-day written notices of pending lapses or terminations;

(d)      Failing to provide proper notice to policy owners on an annual basis of the policy owners' right to designate individuals to receive notices of pending lapse or termination;

(e)      Lapsing or terminating policies without strictly complying with the terms of the policies;

(f)      Improperly demanding and retaining Unearned Premiums, in disregard of its legally ineffective terminations;

(g)      Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendant had not strictly complied with the terms of the policies;

(h)      Improperly requiring reinstatement or continuation of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

(i)      By failing to acknowledge United's ongoing promise to continue coverage;

(j)      By failing to provide the notices required by the policies;

(k)      By threatening to alter the terms of the policies and violate the provisions of the law by asserting a right to continual payment of premium after United improperly terminates a policy; and

137.    Under the terms of this policy, Plaintiff and Class members were entitled to being mailed sufficient written notice prior to the effectuation of any lapse or termination for nonpayment. For example, in addition to the protections afforded by Sections 10113.71 and 10113.72, the policy itself promised that Defendant would send a written notice of default before lapsing or

46

terminating the policy. United sent no such notice and, thus, breached the insurance contract by failing to provide that notice. United also failed to send appropriate notices to Class members.

138. All the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policy, as well as express material repudiations of the contract. To the extent any contractual obligations, duties, or conditions are imposed on policy owners or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendant's material breaches. After each material breach and repudiation, each policy owner was thus excused from the further tendering of premiums and from any further performance under the terms of the policy, including, but not limited to, the acceptance of any offer by United of any reinstatement or modification to the policy.

139. Defendant's conduct caused injury upon the false, wrongful and inadequate termination of coverage, devaluing the policy, and subsequently caused injury in fact through the further denial of an ability to resume coverage and ultimately refusing to pay claims. Plaintiff and her fellow Class members suffered harm through the loss of coverage, the loss of peace of mind related to the existence of coverage, the forced payment of Unearned Premiums, the denial of policy benefits, the payment of inflated or disallowed benefits, the devaluation of the policy by the wrongful assertion that the policy had gone through some form of reinstatement, and/or the loss in protections for beneficiaries.

140. To the extent any policy owners and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendant is estopped from asserting such conditions, due to its conduct and material breaches.

141. As a legal and proximate result of the conduct described herein, Plaintiff

and the Class have suffered direct and foreseeable economic damages, including loss of policy benefits and allowed interest under the terms of the policies and the law, in a nature and amount to be proven at the time of trial.

## VII.    THIRD CAUSE OF ACTION

### UNFAIR COMPETITION (CAL. BUS. AND PROF. CODE § 17200, *ET SEQ.*)

### (By Plaintiff, Individually, and on Behalf of the Class)

142.    Plaintiff incorporates by reference each and every allegation contained above.

143.    California Business and Professions Code Sections 17200, *et seq.*, ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practices.

144.    Defendant committed unlawful, unfair, and deceptive acts under the UCL by violating and continuing to violate The Statutes.

145.    Also, United's unfair competition includes Defendant's ongoing concealment of the rights afforded to policy owners under the Statutes. Defendant continues to conceal and mislead the policy owners and beneficiaries of the existence of a right to a 30-day lapse notice, a right to a 60-day grace period, a right to an annual designation, as well as the provisions of these Statutes that mandate strict compliance before any effective lapse or termination occurs.  Defendant has failed and continues to fail to explain to policy owners and beneficiaries that a life insurance policy in force on or after January 1, 2013, cannot be effectively terminated until there is strict compliance with all provisions of the Insurance Code, and that, without such strict compliance, the policy remains in force.

146.    Moreover, United has committed deceptive acts under the UCL by affirmatively and erroneously telling Class members, like Plaintiff, that their policies had grace periods of less than 60 days and/or that their policies lapsed or terminated. The truth is that the policies had grace periods of at

48

least 60 days and the policies had *not* actually lapsed or terminated.

147. The unlawful, unfair, and deceptive business practices described above have proximately caused harm and economic injuries to Plaintiff, the Class, and to the general public in the form of lost money or property. The money lost by the Class includes the policy benefits that United is withholding, as well as the premiums it wrongfully collected.

148. Pursuant to California's UCL, Plaintiff, the general public, and the members of the Class are entitled to restitution of the money or property acquired by Defendant by means of such business practices, in amounts yet unknown, but to be ascertained at trial. Examples of this lost money acquired illegally by Defendant include unrefunded premiums, withheld benefits, and diminution of the value of policies.

149. Also, Defendant continues to this day to ignore or otherwise violate the Statutes, and continues to ignore or repudiate otherwise valid and in-force life insurance policies that should be in effect today. Defendant continues to rob beneficiaries and owners, like Ms. Nieves, of their lawfully-owned policies and benefits. As such, and pursuant to California's UCL, Plaintiff, the members of the Class, and the general public are also entitled to injunctive relief, including public injunctive relief, against Defendant's ongoing business practices.

150. If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff, the Class, and the general public will be irreparably injured.

151. Defendant, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the Class, and the general public.

152. Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon

3:21-CV-01415-H-KSC

1   the general public.

2   153.   Private enforcement of these rights is necessary, as no public agency has

3         pursued enforcement and the interests Plaintiff seeks to protect are for the

4         benefit of the general public. Plaintiff is, therefore, entitled to an award of

5         attorney's fees and costs of suit pursuant to, among others, California's

6         UCL, the Common Fund Doctrine, the Public Benefit Doctrine, and Cal.

7         Code of Civil Procedure Section 1021.5.

8                    **VIII.  FOURTH CAUSE OF ACTION**

9                            **BAD FAITH**

10                    **(By Plaintiff, Individually)**

11  154.   Plaintiff incorporates by reference each and every allegation contained

12         above.

13  155.   At all relevant times, Plaintiff was the policy owner, the named beneficiary,

14         and the mother of the insured.

15  156.   At all relevant times, United owed Plaintiff an obligation to perform the

16         express and implied obligations imposed by the policy, to act in good faith,

17         to deal fairly with Plaintiff, and to not interfere with Plaintiff's right to

18         receive the benefits of the policy. These duties included not only the duty

19         to pay the policy benefits to the named beneficiary upon the death of the

20         insured, but also United's ongoing promise to accept and receive premiums

21         and maintain the coverage at the premium amounts scheduled, as well as to

22         continue to offer other benefits contained in the policy, including the ability

23         to borrow and increase the amount of coverage, amongst other items.

24  157.   The obligations and duties described herein and described before have

25         existed from the inception of the policy and continue through the pendency

26         of this action. By its conduct described above, United has materially

27         breached the terms and conditions of the policy and the statutory mandates

28         of California law by improperly lapsing and terminating the policy, by

improperly demanding payment of Unearned Premiums as a condition of revival or reinstatement, by declaring Plaintiff's policy a "reinstatement" of some kind and by otherwise failing to comply with the mandates of the Statutes.

158.  Amongst other things, Defendant breached the policy in 2016, 2017 and 2018 by failing to fully and properly advise Plaintiff of her right to designate under Section 10113.72. Thereafter, in 2018, Defendant violated Section 10113.71(a) by terminating the policy on April 6, 2018--less than 60 days after the premium due date. Defendant also materially breached the policy by failing to provide the required notice of pending lapse, as well as the attempted termination, which constituted a repudiation of the contract and anticipatory denial of any benefits. The lack of proper pending-lapse notices voided any attempted notice. Further contractual violations of the policy occurred throughout 2018 through 2021 and the filing of the Original Action. Defendant further violated the promises of the policy by demanding the payment of Unearned Premiums as a condition of the "reinstatement" and further violated the policy by improperly denying the request for "reinstatement." After acknowledgement of its improper termination, United then improperly continued to demand payment of Unearned Premiums and continued to treat Plaintiff's policy as requiring "reinstatement."

159.  Subsequent to formal litigation, and in a new separate violation of the obligations imposed by the policy, Defendant ignored Plaintiff's accepted nonwaiver and reservation conditions. Defendant continues to this day to repudiate all the actual provisions and consumer protections afforded by the Statutes.

160.  When Defendant repudiated and unilaterally terminated the policy, Defendant was aware that the policy was a valid and enforceable contract

3:21-CV-01415-H-KSC

1    and required acknowledgment that the policy was valid and was not subject

2    to termination of coverage, as asserted by Defendant.

3    161.    Defendant, at all relevant times and to date, breached the covenant of good

4    faith and fair dealing owed to Plaintiff by failing to comply with the terms

5    of the policy, by asserting policy provisions which did not apply to preclude

6    coverage, by failing to completely investigate its attempts to terminate the

7    policy, by intentionally failing to abide by the policy and the Statutes, by

8    placing Defendant's interests above those of its policy owners, by

9    unreasonably asserting policy provisions without considering the actual

10    facts and the law, by misrepresenting the policy terms and conditions, by

11    misrepresenting and not applying the law, and by failing to comply with

12    proper industry standards and customs regarding lapse or termination of life

13    insurance policies.

14    162.    One element of Plaintiff's claim for bad faith is the fraud and concealment

15    undertaken by Defendant during the entirety of the parties' relationship,

16    during which United has misrepresented and concealed from Plaintiff

17    material facts and information crucial to Plaintiff's needs.

18    163.    Defendant knew, or should have known, prior to January 1, 2013, that

19    California law (1) mandated that 60-day grace periods applied to all policies

20    in force as of January 1, 2013, and thereafter, regardless whether the policy

21    was issued or delivered prior to January 1, 2013; (2) that no lapse or

22    termination is effective unless preceded by timely and proper notices of

23    pending lapse or termination; (3) that notices must be sent not only to the

24    policy owner, but also to designees, known assignees, or other persons

25    having an interest in the individual life insurance policy; and (4) that all

26    policy owners must be annually provided notice of a right to designate said

27    notice recipients.

28    164.    Despite knowledge of the applicability of these provisions to all policies

3:21-CV-01415-H-KSC

issued or delivered in California, and the impropriety of its actions, United made the conscious decision, ratified by its managerial agents, officers, and directors, to unilaterally terminate the policy on improper grounds. Defendant further made the conscious decision to make no attempt to contact its policy owners, whose policies had been illegally terminated, or beneficiaries, whose claims for benefits had been improperly denied, and to inform such individuals of United's misconduct, despite knowledge of United's violation of the Statutes. United will thus be equitably estopped from asserting any claim that any statute of limitations has expired or that Plaintiff's or any Class member's conduct, after United's breach, mitigates or eliminates any of United's liabilities.

165.    Plaintiff has suffered and will continue to suffer injuries, damages, and harm legally caused by Defendant's past and ongoing failure to uphold the terms of the policy. Plaintiff has also suffered and will continue to suffer consequential economic injuries in a nature and amount to be proven at the time of the trial.  These injuries include emotional distress, concern, anger, and worry concerning the loss of coverage. Plaintiff has also been required to retain legal counsel and has and will continue to incur attorney's fees and expenses. Defendant's conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiff seeks compensation in an amount within the jurisdiction of this Court to be proven at the time of trial. Plaintiff thus seeks full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the policy.

166.    These acts of United all constitute malice, oppression, and fraud.  United and its officers, directors, and managerial agents, have also made repeated, intentional misrepresentations and engage in active concealment, as heretofore discussed, thus constituting deceit and fraud. In performing these

3:21-CV-01415-H-KSC

acts, United and its officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment to avoid incurring liabilities and costs associated with compliance with the law. Such conduct was, in fact, malicious, oppressive, and fraudulent, justifying an award of punitive damages.

## IX.   PRAYER FOR RELIEF

Plaintiff MARILYN NIEVES, Individually, and on Behalf of the Class, prays for relief against Defendants as follows:

1.   For certification of this action as a Class Action;

2.   A declaration of Plaintiff's and the Class' rights pursuant to the insurance policies issued by Defendant, and a declaration that Defendant has violated the Statutes;

3.   For an injunction to issue against Defendant, stopping and remedying the ongoing violation of the Statutes, including public injunctive relief;

4.   For economic damages according to proof where available;

5.   For restitution or other equitable remedies where available;

6.   For punitive damages and/or penalties where available;

7.   For interest where available;

8.   For Plaintiff, individually, only:  additional economic and noneconomic damages, punitive and exemplary damages as a result of Defendant's bad faith;

9.   For attorney's fees and all litigation costs and expenses where available; and

10.   For such other and further relief as this Court deems just and proper.

Respectfully submitted:

DATED:   October 18, 2021          /s/ Jack B. Winters, Jr.
                                   **WINTERS & ASSOCIATES**

1
2
3
4

Jack B. Winters, Jr., Esq.
Georg M. Capielo, Esq.
Sarah Ball, Esq.
jackbwinters@earthlink.net
gcapielo@einsurelaw.com
sball@einsurelaw.com

5
6
7

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas, Esq.
Alex Tomasevic, Esq.
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

8
9
10

Attorneys for Plaintiff
MARILYN NIEVES, Individually,
and on Behalf of the Class

## <u>DEMAND FOR JURY TRIAL</u>

11
12

Plaintiff MARILYN NIEVES, Individually, and on Behalf of the Class, hereby

13

demands a jury trial on all issues triable by jury in this matter.

Respectfully submitted:

14
15

DATED:    October 18, 2021

<u>/s/ Jack B. Winters, Jr.</u>
**WINTERS & ASSOCIATES**

16
17
18
19

Jack B. Winters, Jr., Esq.
Georg M. Capielo, Esq.
Sarah Ball, Esq.
jackbwinters@earthlink.net
gcapielo@einsurelaw.com
sball@einsurelaw.com

20
21
22
23

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas, Esq.
Alex Tomasevic, Esq.
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

24
25

Attorneys for Plaintiff
MARILYN NIEVES, Individually,
and on Behalf of the Class

26
27
28

3:21-CV-01415-H-KSC