1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MARILYN NIEVES, individually, and on          Case No.:  3:21-cv-01415-H-KSC
     behalf of a class,
12                                                 **ORDER DENYING DEFENDANT'S**
                                Plaintiffs,        **MOTION TO DISMISS AND**
13                                                 **DENYING PLAINTIFF'S MOTION**
     v.                                            **TO STRIKE**
14
     UNITED OF OMAHA LIFE
15   INSURANCE CO., Nebraska corporation;          [Doc. Nos. 23, 27-1.]
     and DOES 1 thru 10, inclusive,
16
                                Defendants.
17

18
19        On July 6, 2021, Plaintiff Marilyn Nieves ("Plaintiff") filed her Complaint alleging

20   claims for declaratory relief, breach of contract, bad faith, and unfair competition against

21   Defendant United of Omaha Life Insurance Company ("Defendant" or "United") and

     unnamed Does 1 through 10 in the Superior Court of California, San Diego County, on
22
     behalf of herself and a putative class of similarly situated individuals.  (Doc. No. 1-2.)
23
     Defendant removed the action to this Court on August 6, 2021 pursuant to the Class Action
24
     Fairness Act, 28 U.S.C. §§ 1332, 1441, and 1453 and federal diversity jurisdiction.  (Doc.
25
     No. 1.)  Defendant filed a motion to dismiss on September 13, 2021.  (Doc. No. 14.)
26
     Plaintiff then filed her First Amended Complaint ("FAC") on October 18, 2021.  (Doc. No.
27
     22.)  Defendant filed a subsequent motion to dismiss on November 5, 2021.  (Doc. No. 23.)
28

1

1    On January 4, 2022, Plaintiff filed her opposition and a motion to strike several of

2    Defendant's evidentiary submissions.  (Doc. Nos. 27, 27-1.)  Defendant filed its reply in

3    support of its motion and an opposition to Plaintiff's motion to strike on January 18, 2022.

4    (Doc. Nos. 28, 29.)  The Court held a hearing on the motion on January 31, 2022.  (Doc.

5    No. 32.)  Alex M. Tomasevic and Jack B. Winters appeared on behalf of the Plaintiff and

6    Larry Mark Golub and Vivian Ilana Orlando appeared on behalf of the Defendant.  For the

7    foregoing reasons, the Court denies Defendant's motion to dismiss.

8                                    **BACKGROUND**[1]

9    **I.      Plaintiff's Factual Allegations**

10           In June of 2016, Plaintiff, a resident of San Diego County, California, purchased a

11   $30,000 whole life policy (the "Policy") from United that insured the life of her son.  (FAC

12   ¶¶ 42, 72.)  Plaintiff is the owner and sole beneficiary of the Policy.  (Id. ¶ 42.)  United is

13   a Nebraska corporation that administers life insurance policies in California, including

14   Plaintiff's Policy.  (Id. ¶ 43.)  Plaintiff's individual claims center on United's alleged acts

15   related to the Policy.  Plaintiff alleges that United repeated the same unlawful acts across

16   thousands of other life insurance policies.  (Id. ¶ 2.)

17           The Policy requires a premium payment of $224.40 per year.  (Id. ¶ 74.)  Plaintiff

18   set up an automatic monthly payment from her bank account to pay the Policy premium.

19   (Id. ¶ 77.)  Premiums were paid by this method until February of 2018, when an automatic

20   payment was returned.  (Id.)  On March 16, 2018, Plaintiff received a notice from United

21   that her payment due on February 6, 2018 was returned.  (Id.)  Plaintiff subsequently

22   provided a new payment authorization for automatic payments and requested that United

23   deduct the premiums due on April 2, 2018.  (Id.)  On March 26, 2018, United confirmed

24   receipt of her payment authorization by letter.  (Id.)

25           On April 6, 2018, United sent Plaintiff a notice indicating that payment for the

26   February premium had not been received and that as a result, coverage under the Policy

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28   [1]      The following allegations are taken from Plaintiff's FAC.

                                          2

1    had terminated.  (Id. ¶ 78.)  Plaintiff alleges that no pre-termination notice was sent to any

2    Policy designee or Plaintiff.  (Id.)  According to Plaintiff, after issuance of the Policy in

3    2016, she was never advised of her right to designate a second addressee on an annual basis

4    in violation of Cal. Ins. Code § 10113.72(b).  (Id. ¶ 75.)

5           Plaintiff contacted United to reinstate her Policy.  She was told that "as a condition

6    of seeking reinstatement, she had to pay premiums for the period of time that United had

7    declared her policy void."  (Id. ¶ 79.)  On April 16, 2018, United provided Plaintiff with

8    an Application for Reinstatement.  (Id. ¶ 81.)  Plaintiff alleges that the application requested

9    detailed medical information and the payment of premiums for the uninsured period.  (Id.)

10   On May 18, 2018, United received Plaintiff's reinstatement application.  (Id. ¶ 83.)  At that

11   time, United purportedly "again violated [Cal. Ins. Code § 10113.72(a)] by failing to

12   provide Plaintiff . . . with a right to designate."  (Id.)

13          On June 8, 2018, United denied reinstatement "based in part on pharmaceutical

14   information we received."  (Id. ¶ 84.)  Plaintiff purports that the "pharmaceutical

15   information" indicated that the insured was taking medication to treat his autism—a

16   condition that purportedly existed at the time that the Policy was issued.  (Id.)  Plaintiff

17   alleges that United used the lapse of insurance coverage as an opportunity to rewrite and

18   renegotiate her Policy.  Plaintiff alleges that this practice allows United to remove from its

19   pool of insureds "those individuals who had health issues that were less acute, or that [the

20   insurer] had not fully appreciated, at the time of the original underwriting."  (Id.)

21          Plaintiff alleges that United's conduct violated the California Insurance Code

22   Sections 10113.71 and 10113.72 (commonly known as "the Statutes"), which regulate the

23   termination of life insurance policies for nonpayment of premiums.  (Id. ¶ 1.)  Plaintiff

24   alleges that United violated the Statues in several respects by: (i) not offering a right of

25   designation to all "applicants" for various forms of life insurance; (ii) not providing a 60-

26   day grace period; (iii) not mailing accurate 30-day pending lapse notices; (iv) not providing

27   annual notifications to policy owners of their rights to designate; (v) not applying the

28   mandates of the Statutes as an absolute condition for termination of any policy for

1  nonpayment of premium; (vi) treating policy owners directly and indirectly as if they were

2  in default for payment of premiums; (vii) demanding the payment of Unearned Premiums[2]

3  on policies that were illegally terminated and repudiated; and (viii) concealing its failure

4  to company with the Statutes.  (Id. ¶¶ 65, 99.)  According to Plaintiff, when United failed

5  to abide by the Statutes, its termination of her Policy was ineffective.  (Id. ¶¶ 9, 53.)

6       Plaintiff states that in May of 2021, United "admitted that it had erred in declaring

7  [Plaintiff's] policy as having been properly terminated."  (Id. ¶ 92.)  But United still

8  required Plaintiff to pay the Unearned Premiums.  (Id.)  Plaintiff alleges that United has

9  unlawfully charged policy owners "tens of millions of dollars" in Unearned Premiums.  (Id.

10 ¶¶ 3, 29.)  Plaintiff also alleges that United is withholding "tens of millions of dollars of

11 policy benefits . . . on the patently false assertion that the policies were properly and legally

12 terminated."  (Id. ¶ 29.)

13      On July 23, 2021, after Plaintiff's suit was originally filed and subsequently removed

14 to this Court, United offered to "unconditionally reinstate the policy and waive any demand

15 for payment of prior premiums."  (Id. ¶¶ 94, 98.)  Plaintiff calls United's offer a "litigation

16 tactic[]" aimed at "eliminat[ing] Plaintiff's individual and putative Class claims."  (Id. ¶¶

17 10, 95.)  Plaintiff asserts that the offer does not cure her harm because the Policy is less

18 valuable now than it was prior to reinstatement.  (Id. ¶ 59.)

19      Plaintiff accepted the offer under a reservation of rights.  In Plaintiff's

20 correspondence with United, she "specifically advised United not to accept premiums if

21 [United] intended to argue that the claims of [Plaintiff] or the Class had somehow been

22 satisfied or no longer existed."  (Id.)  Plaintiff labels United's waiver of the Unearned

23 Premiums as an admission of liability.  (Id.)  United did not respond to Plaintiff's letter.

24 (Id. ¶ 97.)  Plaintiff made a new premium payment and completed a third-party designation.

---

26 [2]     Plaintiff uses the term "Unearned Premiums" to describe insurance premiums that
27 Plaintiff would have owed United during the uninsured time period had the Policy
   remained in effect.  Allegedly, United initially demanded that Plaintiff pay these premiums
28 in order for the Policy to be reinstated.  (Id. ¶¶ 8, 92.)

4

1    (Id.)  United accepted Plaintiff's premium payment without objection or condition.  (Id.)

2    Plaintiff's policy is now considered to be active and in force.  (Id. ¶ 14.)

3                                              **DISCUSSION**

4          Defendant seeks dismissal of Plaintiff's FAC for failure to state a claim pursuant to

5    Fed. R. Civ. P. 12(b)(6).  (Doc. No. 23 at 2-4.)  If the Court denies the motion, Defendant

6    moves the Court to either strike portions of the FAC under Fed. R. Civ. P. 12(f) or order

7    that Plaintiff provide a more definite statement under Fed. R. Civ. P. 12(e).  (Id.)

8    **I.    Motion to Dismiss**

9          **A.    Legal Standard**

10         Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for failure to state a

11   claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, a

12   complaint must contain "enough facts to state a claim to relief that is plausible on its face."

13   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

14   when the plaintiff pleads factual content that allows the court to draw the reasonable

15   inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556

16   U.S. 662, 678 (2009).  Dismissal under Rule 12(b)(6) is appropriate where "the complaint

17   lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

18   Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  Courts

19   must "accept factual allegations in the complaint as true and construe the pleadings in the

20   light most favorable to the nonmoving party."  Manzarek v. St. Paul Fire & Marine Ins.

21   Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts do not accept as true allegations that

22   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  In re

23   Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

24         **B.    Breach of Contract Claim**

25         Under California law, a claim for breach of contract requires (i) the existence of the

26   contract; (ii) plaintiff's performance of the contract or excuse from non-performance; (iii)

27   defendant's breach of the contract; and (iv) the resulting damage to the plaintiff.  D'Arrigo

28

1   Bros. of Cal. v. United Farmworkers of Am., 169 Cal. Rptr. 3d 171, 178 (Cal. Ct. App.

2   2014).  United asserts that Plaintiff did not sufficiently plead the damages element.

3        Plaintiff sets forth several theories of damages in her detailed FAC.  Plaintiff states

4   that she suffered monetary loss, diminution in the value of the Policy, and a reduced ability

5   to insure her son.  FAC ¶¶ 41, 141.  She claims that the reinstated Policy is less valuable

6   than her original Policy because of a new contestability period.[3]  Plaintiff asserts damages

7   relating her efforts to remedy the termination.  Id.  Plaintiff alleges that these damages are

8   ongoing because of Defendant's "past and ongoing failure to uphold the terms of the

9   policy."  Id. ¶ 165.

10       Plaintiff argues that United's actions fall within the anticipatory breach doctrine.

11  Plaintiff asserts that if United committed an anticipatory breach, she may recover damages

12  before performance is due under the Policy.  "Anticipatory breach [or anticipatory

13  repudiation] occurs when one of the parties to a bilateral contract repudiates the contract."

14  Taylor v. Johnson, 15 Cal.3d 130, 137 (Cal. 1975).  "When a promisor repudiates a

15  contract, the injured party . . . can treat the repudiation as an anticipatory breach and

16  immediately seek damages for breach of contract . . . ."  Id.

17       In Caminetti v. Manierre, 23 Cal.2d 94, 104 (1943), the California Supreme Court

18  concluded that "[t]he wrongful cancellation of a contract of insurance . . . is somewhat

19  analogous to a breach by anticipatory repudiation[.]"  Plaintiff argues that she, like the

20  insured in Caminetti, can bring a suit for anticipatory breach for immediate damages.

21  United argues that Caminetti is distinguishable and should be limited to its facts.  (Doc.

22

23

24  [3]   Plaintiff alleges that the reinstatement created a new contestability period, which
    reduces the value of the Policy.  Id. ¶¶ 59, 106.  United represented that no new
25  contestability period applies.  (Doc. No. 23 at 14, 16, 31 n.12; Doc. No. 28 at 5, 10.)
    United's claim is counter to Plaintiff's well-pled allegations.  (FAC ¶¶ 59, 106.)  At the
26  motion to dismiss stage, the Court takes Plaintiff's well-pled allegations as true and draws
    inferences in the Plaintiff's favor.  Manzarek, 519 F.3d at 1031.  Plaintiff's allegations are
27  not merely conclusory or unreasonable.  See In re Gilead Scis. Secs. Litig., 536 F.3d at
28  1055.

3:21-cv-01415-H-KSC

No. 28 at 5-7.)  The Court considers Caminetti to be analogous to this case.  In Caminetti, the insureds lost their non-cancellable disability insurance coverage and experienced difficulty finding replacement coverage.  Plaintiff likewise alleges that her insurance coverage was improperly terminated and that she encountered difficultly replacing the Policy through a new underwriting process.  FAC ¶¶ 41, 80-84.[4]  Plaintiff asserts numerous allegations indicating that United breached their agreement prior to performance.  Id. ¶¶ 76-93.  These allegations are sufficient to state a claim for anticipatory breach at this stage.

United argues that Plaintiff's allegations are insufficient plead damages because of Section 10111 of the California Insurance Code and Plaintiff's acceptance of the reinstatement offer.  (Doc. No. 23 at 22-23.)  Section 10111 states that "[i]n life . . . insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto."  Cal. Ins. Code § 10111.  United asserts that Section 10111 requires that an insured must be deceased for a plaintiff to receive any damages.  (Doc. No. 23 at 23.)

The Court does not view Section 10111 as precluding Plaintiff from stating a claim for damages at the motion to dismiss stage.[5]  Further, United's reinstatement of the Policy does not eliminate Plaintiff's damages.  Wrongful cancellation of a life insurance policy is

---

[4]   Defendant's argument that Caminetti is limited to its specific facts is unpersuasive. Defendant largely relies on Garage and Serv. Emps. Union v. Pacific Mutual Life Ins. Co., 82 Cal. Rptr. 821 (Cal. Ct. App. 1969), in which the California Court of Appeal distinguished Caminetti, in part, because the insurer properly denied coverage.  The Court concluded that the "[insurer] was not repudiating its obligation under the policy.  It was adhering to its terms when it advised the member that the policy had been cancelled by the [policy holder.]"  Id. at 824.  Plaintiff's allegations are the opposite here and the Court does not reach any conclusion as to their truth on a motion to dismiss.  The remainder of Defendant's argument depends on the Policy being a "unilateral contract," but the contract was not unilateral at the time of the alleged breach.  Thus, the Defendant's support regarding anticipatory breach and unilateral contracts are inapplicable.

[5]   None of the authorities cited by United are persuasive on the narrow issue before the Court, i.e., whether Plaintiff's allegations of damages are sufficient to survive a motion to dismiss.  (Doc. No. 23 at 22-23.)

3:21-cv-01415-H-KSC

1    more than a nominal injury.  See generally Kim v. AXA Fin., Inc., 2008 WL 11388671, at

2    *4 (D. Nev. 2008); Bennett v. Am. Gen. Life Ins. Co., 2015 WL 12661909, at *6 (C.D.

3    Cal. 2015); Siino v. Foresters Life Ins. & Annuity Co., 2020 WL 8410449, at *4 (N.D. Cal.

4    2020).  Defendant's argument is better suited for a motion for summary judgment when

5    the record is more fully developed.  Accordingly, the Court concludes that Plaintiff

6    sufficiently stated a claim breach for contract.

7                    C.      Claim for Declaratory Relief

8          Plaintiff requests declaratory relief from the Court.  FAC ¶ 132.  Defendant seeks to

9    dismiss this claim on the basis that no actual controversy exists between the parties.  (Doc.

10   No. 23 at 25-28.)  Plaintiff argues that Defendant is improperly and prematurely attacking

11   her class certification.  (Doc. No. 27 at 23-25.)

12         The Declaratory Judgment Act permits district courts to "declare the rights and other

13   legal relations of any interested party seeking such declaration, whether or not further relief

14   is or could be sought."  28 U.S.C. § 2201.  Under federal and California law, an actual

15   controversy must exist for courts to issue declaratory relief.  Id.; Cal. Civ. Pro. § 1060.

16   "The decision to grant declaratory relief is a matter of discretion, even when the court is

17   presented with a justiciable controversy."  U.S. v. State of Wash., 759 F.2d 1353, 1356 (9th

18   Cir. 1985) (citations omitted).  Actions for declaratory relief must be "carefully limited in

19   scope to meet the 'case and controversy' requirements of Article III of the Constitution."

20   Pac. Merch. Shipping Ass'n v. Aubry, 918 F.2d 1409, 1414 (9th Cir. 1990) (citations

21   omitted).

22         United asserts that there is no controversy between the parties on Plaintiff's

23   declaratory relief claim.  (Doc. No. 23 at 26.)  But Plaintiff sufficiently pled allegations of

24   a dispute between the parties concerning the contestability period.  FAC ¶ 132 ("Plaintiff

25   also desires a judicial determination that her policy did not become contestable by virtue

26   of the improper forced 'reinstatement.'").  Plaintiff alleges that reinstatement created a

27   "new contestability period it did not have before[,]" which allegedly reduces the value of

28   the Policy.  Id. ¶¶ 59, 106.

1   Under Cal. Ins. Code § 10113.5(a), an individual life insurance policy is generally

2   incontestable "after it has been in force, during the lifetime of the insured, for a period of

3   not more than two years after its date of issue[.]"  But "upon reinstatement, [a policy] may

4   be contested on account of fraud or misrepresentation of facts material to the reinstatement

5   only for the same period following reinstatement, and with the same conditions and

6   exceptions, as the policy provides with respect to contestability after original issuance."

7   Id.  The Court concludes that Plaintiff pled the existence of a controversy between the

8   parties sufficient for standing to bring her declaratory relief claim.[6]

9   **D.    Bad Faith Claim**

10  Defendant moves to dismiss Plaintiff's bad faith claim on three grounds: (i) it is

11  precluded by the statute of limitations; (ii) it necessarily fails because Plaintiff does not

12  state a claim for breach of contract; and (iii) it does not relate to an improper failure to pay

13  benefits.  (Doc. No. 23 at 15-17.)

14  "Under California law, 'insurance bad faith' refers to a breach of the implied

15  covenant of good faith and fair dealing as that covenant applies to insurance policies."

16  Gentry v. State Farm Mut. Auto. Ins. Co., 726 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010).

17  "In order to establish a breach of the implied covenant of good faith and fair dealing under

18  California law, a plaintiff must show: (1) benefits due under the policy were withheld; and

19  (2) the reason for withholding benefits was unreasonable or without proper cause."

20  Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001).  "The key to a bad faith

21  claim is whether or not the insurer's denial of coverage was reasonable."  Id.  A claim for

22  insurance bad faith can sound in contract and in tort.  Gentry, 726 F. Supp. 2d at 1166.

23

24

25

26  [6]   Defendant alternatively moves the Court to strike portions of Plaintiff's request for
    declaratory relief.  (Doc. No. 23 at 28.)  But this argument is also based on standing and as
27  discussed, the Court disagrees with Defendant's view.  Accordingly, the Court denies
    Defendant's motion to strike portions of Plaintiff's declaratory relief claim.
28

3:21-cv-01415-H-KSC

1       First, Defendant asserts that a two-year statute of limitations for bad faith sounding

2  in tort applies and that this bars Plaintiff's claim.  (Doc. No. 28 at 12.)  However, Plaintiff

3  repeatedly alleges that United breached the Policy; this breach is the basis for her bad faith

4  claim.  See, e.g., FAC ¶¶ 157-58, 160-61, 165.  A four-year statute of limitations applies

5  to claims for bad faith that sound in contract.  Frazier v. Metro. Life Ins. Co., 169 Cal. App.

6  3d 90, 102 (Cal. Ct. App. 1985).  Accordingly, Plaintiff alleges a timely claim for bad

7  faith.[7]

8       Second, the Court concludes that Plaintiff sufficiently pled an underlying claim for

9  breach of contract.  Defendant's argument is better suited for a motion for summary

10  judgment when the record is more fully developed.

11       Third, Defendant asserts that Plaintiff's bad faith claim does not relate to an

12  improper failure to pay benefits.  (Doc. No. 23 at 30.)  But the authority cited by the

13  Defendant only states that "benefits due under the policy must have been withheld" for a

14  party to state a claim for bad faith, not that there must be a failure to pay benefits.  Love v.

15  Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151-52 (Cal. Ct. App. 1990).  Plaintiff asserts that

16  United withheld certain benefits due under the Policy, i.e., the "benefit of her initial bargain

17  with United," like the ability to maintain her Policy "without the need of further

18  underwriting and on the same conditions as originally set[.]"  FAC ¶ 102.  Plaintiff alleges

19  that she lost the benefit of a policy that complies with the Statutes.  Id.  Other courts have

20  concluded that similar claims are viable as suits in bad faith.  See, e.g., Egan v. Mut. of

21  Omaha Ins. Co., 24 Cal. 3d 809, 818-19 (Cal. 1979) (disability insurer breached the implied

22  covenant of good faith and fair dealing when it failed to properly investigate plaintiff's

23  insurance claim); Spindle v. Travelers Ins. Cos., 66 Cal. App. 3d 951, 958 (Cal. Ct. App.

24  1977) (insurance cancellation can be the basis for a bad faith claim).

25

26

27

28

[7]     Plaintiff filed suit on July 6, 2021 and her policy was allegedly terminated on April 6, 2018.  (Doc. No. 1-2, FAC ¶ 78.)

10

1    Plaintiff sufficiently alleges that United improperly withheld certain policy benefits

2  within the appropriate statute of limitations.  Accordingly, Defendant's motion to dismiss

3  the bad faith claim is denied.  Defendant's arguments are better suited for a motion for

4  summary judgment when the record is more fully developed.

5    **E.    Unfair Competition Law Claim**

6    Plaintiff asserts a claim pursuant to California's Unfair Competition Law ("UCL").

7  Cal. Bus. & Prof. Code § 17200, et seq.  The UCL prohibits "unfair competition," which

8  includes "any unlawful, unfair or fraudulent business act or practice."  Id.  Each prong of

9  the UCL is a separate and distinct theory of liability.  Lozano v. AT&T Wireless Servs.,

10 Inc., 504 F.3d 718, 731 (9th Cir. 2007).  Plaintiff alleges that United engaged in "unlawful,

11 unfair, and deceptive acts" in violation of the UCL.  FAC ¶ 144.  United attacks Plaintiff's

12 UCL claim two on grounds: (i) Plaintiff lacks standing because she cannot show an injury-

13 in-fact; and (ii) Plaintiff failed to state a claim for restitution or an injunction, which are

14 the only relief available to her in a UCL claim.  (Doc. No. 23 at 30-35.)  The Court

15 addresses each of these arguments in turn.

16    First, standing for UCL claims is restricted to persons who have "suffered injury in

17 fact and ha[ve] lost money or property as a result of the unfair competition."  Cal. Bus. &

18 Prof. Code § 17204; Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 (9th Cir. 2013).  The

19 "lost money or property" requirement means that a plaintiff must demonstrate "some form

20 of economic injury" as a result of the plaintiff's transactions with the defendant.  Hinojos,

21 718 F.3d at 1104.  The amount of lost money or property necessary to show standing is the

22 same that would be required to establish an injury-in-fact for Article III standing.  Id.  There

23 are "innumerable ways" that a consumer can show economic injury from unfair

24 competition; at the pleading stage, "allegations of economic injury suffice."  Id. n. 4.

25    United argues that Plaintiff's claims only concern United's conduct after Plaintiff

26 made her last premium payment. (Doc. No. 23 at 31.)  United's theory is that since Plaintiff

27 never paid a premium for the period in which the Policy was terminated, there are no

28 economic losses.  (Id.)  But this is an overly restrictive view of Plaintiff's allegations.  First,

11

1   Plaintiff alleges that her Policy is less valuable after reinstatement because of a new

2   contestability period.  FAC ¶¶ 59, 106.  Second, Plaintiff alleges that United "wrongfully

3   collected" premiums and unlawfully failed to refund premiums.  Id. ¶¶ 147-48.  Third,

4   Plaintiff alleges that United withheld benefits due to her.  Id. ¶¶ 148-49.  As Plaintiff

5   explains in her opposition, she "paid for a policy that should have had several valuable

6   characteristics," i.e., conformity with the Statutes, "but received a much less valuable

7   policy.  She overpaid."  (Doc. No. 27 at 19.)  At the motion to dismiss stage, these

8   allegations establish an economic injury that is sufficient for standing.  See Kwikset Corp.

9   v. Superior Ct. of Orange Cty., 246 P.3d 877, 885-86 (Cal. 2011).

10       Second, Plaintiff also sufficiently pleads a claim for restitution or an injunction at

11  the motion to dismiss stage.  Remedies available to private plaintiffs under the UCL "are

12  generally limited to injunctive relief and restitution."  Cel-Tech Commc'ns, Inc. v. L.A.

13  Cellular Tel. Co., 973 P.2d 527, 539 (Cal. 1999).  Plaintiffs may not seek damages or

14  attorneys' fees.  Id.  Under the remedy of restitution for a UCL claim, the Court compels

15  the defendant "to return money obtained through an unfair business practice to those

16  persons in interest from whom the property was taken[.]"  Korea Supply Co. v. Lockheed

17  Martin Corp., 63 P.3d 937, 944 (Cal. 2003).  Restitution "is broad enough to allow a

18  plaintiff to recover money or property in which he or she has a vested interest," not just the

19  recovery of money or property that was once in the possession of a plaintiff.  Id. at 947.

20       Defendant asserts that the "unrefunded premiums, withheld benefits and diminution

21  of value of policies" that Plaintiff seeks is not restitution, but contract damages.  (Doc. No.

22  23 at 32.)  But Defendant misconstrues Plaintiff's claims.  Under Plaintiff's theory, she

23  paid for a life insurance policy that would conform to the legal obligations of the Statutes.

24  She asserts a vested interest in such a policy because of her payments.  But United allegedly

25  did not provide such a policy.  Moreover, when United reinstated the Policy, the reinstated

26  Policy was allegedly worth less in value because of the new contestability policy.  United

27  allegedly retains Plaintiff's premiums, but Plaintiff no longer has the same policy she paid

28  for.  At this stage, Plaintiff has adequately pled a claim for restitution pursuant to the UCL.

12

1   See, e.g., Ariste v. Am. Int'l Grp., Inc., 2020 WL 4037219, at *5 (C.D. Cal. 2020) ("the

2   Court is persuaded that at this preliminary stage Plaintiff . . . may plausibly demonstrate

3   that a form of restitution based on insurance premiums paid to the Defendants may be

4   appropriate.").  Plaintiff also sufficiently alleged that an injunction is necessary to prevent

5   irreparable injury and United's alleged engagement in unlawful practices in violation of

6   the UCL.  FAC ¶¶ 150-51.  Defendant disputes these allegations and argues that (i) Plaintiff

7   has a remedy at law, (ii) there is no likelihood of irreparable future injury, and (iii) any

8   injunction is unworkable.  (Doc. No. 23 at 34-35.)   But Defendant's arguments are

9   premature at this stage of the case.  Defendant's arguments concerning injunctive relief are

10  better addressed on a motion for summary judgment when the record is more fully

11  developed.

12  **II.  Defendant's Motions to Strike and Motion for a More Definite Statement**

13  Defendant moves to strike Plaintiff's class definition pursuant to Fed. R. Civ. P.

14  12(f) or, alternatively, for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

15  Defendant raises three arguments against the class definition: (i) the class includes persons

16  who cannot presently be ascertained for purposes of class treatment; (ii) the class includes

17  individuals whose insurance policies may lapse in the future; and (iii) the class includes

18  insurance policies that were originally issued and delivered outside of California and

19  renewed in California after January 1, 2013.

20  Under Fed. R. Civ. P. 12(f), a district court "may strike from a pleading an

21  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The

22  purpose of a motion to strike is to avoid the expenditure of time and money that arises from

23  litigating spurious issues.  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th

24  Cir. 2010).  Motions to strike are "generally disfavored because they are often used as

25  delaying tactics and because of the limited importance of pleadings in federal practice."

26  Cortina v. Goya Foods, Inc., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (citation omitted).

27  A motion to strike should not be granted unless "the matter to be stricken could have no

28  possible bearing on the subject matter of the litigation."   Smith v. Specialized Loan

13

1   Servicing, LLC, 2017 WL 4181395, at *1 (S.D. cal. 2017) (citation omitted).  When ruling

2   on a motion to strike, the court views the pleading under attack in the light most favorable

3   to the pleader.  Id.  "While class allegations may be stricken at the pleading stage, the

4   granting of a motion to dismiss or strike class allegations before discovery has commenced

5   should be done rarely." Id. at *2 (citing In re Wal-mart Stores, Inc. Wage and Hour Litig.,

6   505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (the "better course is to deny such a motion

7   because the shape and form of a class action evolves only through the process of

8   discovery."))

9          Rule 12(e) permits a party to "move for a more definite statement of a pleading to

10  which a responsive pleading is allowed but which is so vague or ambiguous that the party

11  cannot reasonably prepare a response."  Like a motion to strike, a motion for a more definite

12  statement is "disfavored and rarely granted." Griffin v. Cedar Fair, L.P., 817 F. Supp. 2d

13  1152, 1156 (N.D. Cal. 2011) (citation omitted).  "The rule is aimed at unintelligibility

14  rather than a lack of detail and is only appropriate when the defendants cannot understand

15  the substance of the claim asserted." Id. (citation omitted).

16         United's motion to strike the class definition is premature at this stage as no

17  discovery has occurred in this case and many factual issues remain.  Even if United's

18  motion were not premature, it has not shown that Plaintiff's proposed definition is properly

19  subject to a strike.  United's argument is primarily aimed at the scope of Plaintiff's

20  proposed class definition, not the materiality or pertinence of the class definition to

21  Plaintiff's claim.  See Whittlestone, 618 F.3d at 974.  Likewise, a more definite statement

22  is not warranted.  Defendant's challenges are to the scope of the proposed class definition,

23  not the definition's intelligibility.  Accordingly, the Court denies Defendant's motion to

24  strike portions of Plaintiff's class definition and denies Defendant's motion for a more

25  definite statement.

26  **III.    Requests for Judicial Notice**

27         Defendant requests the Court to take judicial notice of various exhibits under the

28  incorporation by reference doctrine.  Plaintiff filed corresponding objections and a motion

14

1   to strike.  "Generally, district courts may not consider material outside the pleadings when

2   assessing the sufficiency of a complaint under [Fed. R. Civ. P. 12(b)(6)]."  Khoja v.

3   Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018).  The Ninth Circuit has

4   cautioned courts that "unscrupulous use of extrinsic documents to resolve competing

5   theories against the complaint risks premature dismissals of plausible claims that may turn

6   out to be valid after discovery."  Khoja, 899 F.3d at 998.  The incorporation-by-reference

7   doctrine is an exception to this general rule.  It is "a judicially created doctrine that treats

8   certain documents as though they are part of the complaint itself."  Id. at 1002.  A defendant

9   "may seek to incorporate a document into the complaint 'if the plaintiff refers extensively

10  to the document or the document forms the basis of the plaintiff's claim.'"  Id. (citing U.S.

11  v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)).

12       Defendant requests that the Court take judicial notice of several documents that are

13  purportedly related to Plaintiff's claim.  (Doc. No. 23-3.)  These documents include the

14  following exhibits attached to Defendant's motion: (1) the "Third Party Notice Request

15  Form" purportedly completed by the Plaintiff; (2) a March 25, 2021 letter from United to

16  Plaintiff's counsel; (3) a November 17, 2020 letter from United to Plaintiff; (4) a July 23,

17  2021 letter from United to Plaintiff's counsel; and (5) a declaration of a United employee.

18  (Docs. No. 23-1, 23-3.)

19       In its discretion, the Court declines to take judicial notice of these documents.  See

20  Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1160 (9th Cir. 2012).  Plaintiff does not

21  refer any of the document extensively or rely on them as a basis for its claims.  Khoja, 899

22  F.3d at 1002.  Further, Defendant only submits a limited selection of the letters exchanged

23  between the parties.  The Court is mindful that a review of only a partial selection of related

24  documents would "risk[] premature dismissals of plausible claims that may turn out to be

25  valid after discovery."  Khoja, 899 F.3d at 998.  Finally, there is no basis for the Court to

26  consider the representations in the United employee's declaration under judicial notice or

27  the incorporation-by-reference doctrine.  Defendant's request is better suited on a motion

28  for summary judgment when the record is more fully developed.  Since the Court declines

15

3:21-cv-01415-H-KSC

1    to take notice of Defendant's submissions in its discretion, <u>Davis</u>, 691 F.3d at 1160, the

2    Court denies Plaintiff's corresponding motion to strike and objections as moot.

3                                                  **CONCLUSION**

4            For the foregoing reasons, the Court denies Defendant's motions to dismiss, to

5    strike, and for a more definite statement.  The Court also denies Plaintiff's motion to strike

6    as moot.

7

8            **IT IS SO ORDERED.**

9

10   DATED:      February 10, 2022

11                                                          _____
                                                             MARILYN L. HUFF, District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28