UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN NIEVES, individually, and on behalf of the class,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 21-cv-01415-H-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. No. 58.] |

On July 6, 2021, Plaintiff filed a class action suit in San Diego Superior Court. (Doc. No. 1, Ex. A, State Court Complaint.) One month later, United removed the case to this Court. (Doc. No. 1.) On October 18, 2021, Plaintiff filed an amended complaint on behalf of herself and a purported class of similarly situated individuals, asserting claims for declaratory relief, breach of contract, bad faith, and unfair competition. (Doc. No. 22, First Amended Complaint ("FAC").)

On January 13, 2023, Plaintiff Marilyn Nieves ("Plaintiff") filed a motion for class certification (the "Motion"). (Doc. No. 58.) On March 7, 2023, Defendant United of Omaha Life Insurance Company ("United") filed its opposition to Plaintiff's Motion for

class certification. (Doc. No. 66.) On March 13, 2023, Plaintiff filed a reply in support of her Motion. (Doc. No. 67.)

The Court held a hearing on Plaintiff's Motion on March 27, 2023. Alex Tomasevic appeared on behalf of Plaintiff and Larry Golub and Vivian Orlando appeared on behalf of United. For the following reasons, the Court denies Plaintiff's Motion.

I.   BACKGROUND

A.   Plaintiff's Policy

In June 2016, Plaintiff purchased a whole life insurance policy (the "Policy") from United that insured the life of her son. (Doc. No. 58-7, "Plt. Decl." ¶ 2, Ex. A, Whole Life Insurance Policy.) Plaintiff is the owner and sole beneficiary of the Policy. (Doc. No. 58-7, Plt. Decl. ¶ 2.) Plaintiff set up an automatic monthly payment to pay the Policy premium. (Id. ¶ 3.) On February 6, 2018, Plaintiff's automatic premium payment did not go through. (Id.) On March 16, 2018, United sent Plaintiff a notice that her February 6, 2018 payment had been returned. (Id. ¶ 4.) In response, Plaintiff sent United a letter providing new payment authorization and requested that United deduct the past due premiums on April 2, 2018. (Id.) United received the letter on March 26, 2018. (Id.) United admitted that it mistakenly did not process the new payment authorization information contained in Plaintiff's letter. (Doc. No. 66-5, "Dougherty Decl." ¶ 9.) Due to this error, United notified Plaintiff on April 6, 2018 that her policy had been terminated. (Id. ¶ 10; Doc. No. 58-7, Plt. Decl. ¶ 5, Ex. B, Termination Letter.)

Following her receipt of the April 6 termination letter, Plaintiff contacted United and asked to reinstate the Policy. (Doc. No. 66-5, Dougherty Decl. ¶ 11.) On April 16, 2018, United provided Plaintiff with an application for reinstatement. (Id.) Plaintiff filled out the application and returned it to United. (Id.) On June 8, 2018, United denied Plaintiff's reinstatement application due to her son's medical condition.[1] (Id. ¶ 12; Doc.

---

[1] In both Plaintiff's initial application to purchase the Policy and Plaintiff's April 2018 reapplication to purchase the Policy, Plaintiff marked "no" as to whether her son

No. 58-7, Plt. Decl. ¶ 7.)

On September 3, 2020, Plaintiff's counsel contacted United and stated that United may have failed to comply with the Statutes and improperly terminated the Policy. (Doc. No. 66-5, Dougherty Decl. ¶ 13.) On November 17, 2020, United sent a letter to Plaintiff offering to reinstate the Policy so long as Plaintiff paid the premium payments due since February 6, 2018. (Id.) Plaintiff did not respond. (Id.) On July 23, 2021, United sent Plaintiff another letter indicating that United "reinstated the [P]olicy without the payment of past due premiums." (Id. ¶ 14, Ex. P United's July 23, 2021 Letter.) Following United's reinstatement, Plaintiff resumed paying the Policy's monthly premiums. (Id. ¶ 15.) Plaintiff's Policy is currently in force. (Id.) Plaintiff's son is living and Plaintiff has not made a claim under the Policy. (Id.)

### B. The Putative Class

Plaintiff's primary argument is that United failed to comply with California Insurance Code Sections 10113.71 and 10113.72 (commonly known as "the Statutes"). (See generally Doc Nos. 22, 58.) The Statutes impose several requirements on life insurance companies. Specifically, the Statues require insurers to: (i) give policy holders a 60-day grace period before canceling a policy; (ii) inform policy holders of their right to designate at least one additional person to receive notices of an overdue premium or impending termination; (iii) provide written notice of nonpayment to the policy holder and any named designee within 30 days of nonpayment; and (iv) provide written notice to the policy holder and any named designee at least thirty 30 days before a policy is terminated. Cal. Ins. Code §§ 10113.71, 10113.72.

The Statutes went into effect on January 1, 2013. The California Supreme Court

---

had been treated by a doctor or a health care provider for any health condition. (Doc. No. 66-5, Dougherty Decl. ¶ 11, Ex. M Reapplication.) As part of the reapplication process, Plaintiff provided United with the authorization to obtain her son's medical records. (Id. ¶ 12.) United obtained records that indicated Plaintiff's son had been prescribed medications for a person with autism, which disqualified him from obtaining reinstatement of the Policy. (Id.)

recently held that the Statutes "apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." McHugh v. Protective Life Ins. Co., 12 Cal. 5th 213, 220 (2021).

Based on the McHugh decision, Plaintiff seeks to certify following class:

"All vested owners and beneficiaries of life insurance policies issued or delivered by Defendant in California, and which, after January 1, 2013, were lapsed or terminated for nonpayment of premium without Defendant first providing all the protections required by Insurance Code Section 10113.71 and 10113.72. Plaintiff excludes from the Class all the class members in the prior certified case of Bentley v. United of Omaha."

(Doc. No. 58 at 5.)  Plaintiff's putative class includes 41,856 individuals with United life insurance policies that lapsed after January 1, 2013.[2] (Doc. No. 66-2, Ex. A "Craig Merrill's Expert Report" at 17.)  The class includes 21,458 individuals with policies that were issued before January 1, 2013 and 20,398 individuals with policies that were issued after January 1, 2013.  (Id.)  The class includes four different types of life insurance policies: universal, variable universal, whole, and term.  (Doc. No. 66-3, Curtis Decl. ¶ 8.)  Plaintiff's Policy is for whole life insurance. (Doc. No. 58-7, Plt. Decl. ¶ 2, Ex. A, Whole Life Insurance Policy.)

## II. LEGAL STANDARDS

Motions for class certification proceed under Rule 23 of the Federal Rules of Civil Procedure.  In order to maintain a class action, a plaintiff bears the burden of showing she has satisfied the prerequisites of Federal Rule of Civil Procedure 23(a), as well as one of the prongs of Rule 23(b).  Fed. R. Civ. P. 23; Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001).  "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous

---

[2]   The Court notes that Christine Curtis' ("Curtis") declaration references 43,563 policies.  (Doc. No. 66-3, Curtis Decl. ¶ 7.) Curtis indicated that this number is greater than the number contained in Professor Craig Merrill's expert report because her spreadsheets contain lines with repeat policy numbers.  (Id.)

parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (emphasis in original).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Dukes, 564 U.S. at 348 (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979)). As such, district courts must conduct a "rigorous analysis" to ensure Rule 23's requirements have been met. Zinser, 253 F.3d at 1186. Determining whether Rule 23's requirements have been met may require some analysis of the underlying claims. Dukes, 564 U.S. at 351 ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"). However, district courts should limit any analysis of the merits to that necessary for assessing Rule 23's requirements. Id.; Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011). If the court is not fully satisfied that the requirements of Rule 23 have been met, certification should be denied. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).

### A. Rule 23(a) Prerequisites

Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of satisfying each of Rule 23(a)'s requirements. Willis v. City of Seattle, 943 F.3d 882, 885 (9th Cir. 2019).

### B. Rule 23(b) Requirements

The proposed class must also satisfy one of the subdivisions of Rule 23(b). Here, Plaintiff seeks to maintain the class action under Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1195 (9th Cir. 2001) (citation omitted).

Rule 23(b)(3) requires that "the court find[] that the [common questions] predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate. Though there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding' . . . and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal citations omitted). Predominance is not met where "non-common, aggregation-defeating, individual issues" are more prevalent or important than "common, aggregation-enabling, issues in the case." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016). Individual issues are ones where "members of a proposed class will need to present evidence that varies from member to member." Id.

### III. PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

United does not dispute that Plaintiff has satisfied Rule 23(a)'s numerosity requirement, but contends that Plaintiff has not satisfied Rule 23(a)'s remaining requirements—commonality, typicality, or adequacy. United also contends that Plaintiff has not established that certification is appropriate under Rules 23(b)(2) or (b)(3). United further contends that certification of an issues class under Rule 23(c)(4) is not appropriate. The Court addresses each in turn.

    **A.**    **Rule 23(a) Prerequisites**

        i.    Numerosity

Plaintiff argues, and United does not dispute, that the class is sufficiently numerous. A class may only be certified if it is "so numerous that joinder of all members

is impracticable." Fed. R. Civ. P. 23(a)(1); Rannis v. Recchia, 380 Fed. App'x 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." Rannis, 380 Fed. App'x at 651. Here, the proposed class consists of over 40,000 members. (Doc. No. 66-2, Craig Merrill's Expert Report at 17.) United does not contest that the class meets the numerosity requirement. (Doc. No. 66 at 8.) Accordingly, numerosity is satisfied. See, e.g., Rannis, 380 Fed. App'x at 651; Floyd v. Saratoga Diagnostics, Inc., No. 20-CV-1520-LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021).

    ii. Commonality

  Plaintiff argues that commonality is satisfied because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Specifically, Plaintiff states that each class member's claim is premised on United's "systematic noncompliance" with the Statutes by "lapsing or terminating a policy in force on or after January 1, 2013, for the same reason (nonpayment of premium), without providing all the protections enumerated in the Statutes." (Doc. No. 58 at 15.) In response, United argues that there are no central questions of law or fact common to the class because the policies at issue contain varying contract terms regarding lapse and notice and because most lapses were not inadvertent. (Doc. No. 66 at 8-15.)

  To satisfy this requirement, "[a]ll questions of fact and law need not be common to satisfy the rule." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Additionally, the party seeking certification only needs to show that "there is a common contention capable of classwide resolution–not that there is a common contention that will be answered, on the merits, in favor of the class." Alcantar v. Hobart Serv., 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation omitted).

  Here, Plaintiff has met her burden to show that there is a common question capable

of classwide resolution. Plaintiff identifies the following common question: whether United engaged in a practice of not complying with the Statutes for policies that were in force on or after January 1, 2013 and is therefore liable for breach-of-contract and UCL claims. Further, Plaintiff does not need to show that each class member will succeed on their claims at this stage. Alcantar, 800 F.3d at 1053. Accordingly, Plaintiff has satisfied the commonality requirement. Wal-Mart, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) [e]ven a single [common] question will do.").

    iii. Typicality

  Plaintiff has not satisfied the typicality requirement because her claims are not "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)). However, "class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Hanon, 976 F.2d at 508.

  Here, Plaintiff asserts that her claims are typical because United lapsed every class member's policy which caused each member to lose "payment of policy benefits or a right to continue their insurance under the terms guaranteed by law." (Doc. No. 58 at 18-19.) United argues that Plaintiff's factual circumstances are atypical: Plaintiff's Policy lapsed due to United's failure to update her banking information whereas other class members may have chosen to terminate their policies, let them lapse, or timely reinstate their policies; Plaintiff is the living owner of a reinstated policy, while some of the class members are vested beneficiaries of coverage; and Plaintiff's Policy is whole life, while

the class also contains universal, variable universal, and term life policies.[3] (Doc. No. 66 at 10-13, 15-16.) Additionally, United contends that absent class members may be subject to atypical defenses such as statute of limitations, waiver, estoppel, and failure to mitigate. (Id. at 13-15.)

Typicality is not met here because Plaintiff's claims will require individualized analysis of the terms of each class member's policy, United's compliance with the Statutes with respect to each class member's policy, and each class member's various defenses. See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (vacating certification order where district court failed to consider individualized defenses when assessing typicality); Pitt v. Metropolitan Tower Life Insurance Co., No. 20-cv-694-RSH-DEB, 2022 WL 17972167 (S.D. Cal. Dec. 1, 2022) (denying class certification where named representative's claims were atypical and common questions predominated). Pitt is directly on point. In Pitt, the district court addressed a similar putative class action against an insurance company alleging violations of the Statutes. Pitt, 2022 WL 17972167. In that case, the district court found that typicality was not satisfied because "there is a lack of common evidence as to [the insurance company's] compliance with the Statutes, requiring individualized inquiries regarding the terms of each class policy and the timing of the notices [the insurance company] provided." Id. at *4. Additionally, the district court pointed to the availability of unique defenses for the class members when it found typicality was not met. Id. at *5.

Here, similar to the insurance company in Pitt, United provided evidence that Plaintiff's Policy and many of the policies issued in California contained a 60-day grace period. (Doc. No. 66-3, Curtis Decl. ¶¶ 16-17.) Additionally, United regularly extended grace periods when directed by regulators, such as for wildfires or Covid-19. (Doc. No. 66-5, Dougherty Decl. ¶ 18.) Further, United provided third-party designation notices at

---

[3] United also points out that the class members' policies have varying terms regarding lapse, notice, and third-party beneficiaries. (Doc. No. 66 at 10-11.)

the time of application for policies issued after January 1, 2013, like they did for Plaintiff's Policy. (Doc. No. 66-3, Curtis Decl. ¶ 13; Doc. No. 66-5, Dougherty Decl. ¶ 6, Ex. G Third Party Notice Request Form.) For policies issued before January 1, 2013, United sent annual third-party designation notices to policy owners starting on October 25, 2016. (Doc. No. 66-3, Curtis Decl. ¶ 12.) Given United's varying contract terms and practices, typicality is not satisfied. See, e.g., Pitt, 2022 WL 17972167 at *4-5; compare In re Paxil Litig., 212 F.R.D. 539, 550 (C.D. Cal. 2003) (named representative was atypical due to "differences among plaintiffs that result from differing factual circumstances"), with Abbit v. ING USA Annuity, No. 13-cv-2310-GPC-WVG, 2015 WL 7272220, at *5 (S.D. Cal. Nov. 16, 2015) (finding typicality because the contract entered by the plaintiff and the class contained the same allegedly fraudulent and misleading provision and was "relatively uniform").

Additionally, Plaintiff has offered little evidence showing that she has sustained an injury that is typical of the class arising out of United's alleged noncompliance with the Statutes. Plaintiff's Policy, unlike most class members' policies, was reinstated. (Doc. No. 66-5, Dougherty Decl. ¶ 14, Ex. P United's July 23, 2021 Letter.) Plaintiff also claims that she is owed damages because the reinstated Policy was allegedly worth less in value due to a new contestability period. (Doc. No. 22, FAC ¶ 59.) Thus, Plaintiff is atypical because different questions of causation and damages underlie her claims. See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (vacating certification order where named plaintiffs did not suffer from one of the most serious harms alleged and therefore "suffered different injuries").

        iv.    Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representati[ve] meets this standard, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on

behalf of the class?" Staton, 327 F.3d at 957. Here, Plaintiff is an adequate representative. Plaintiff asserts that she has every incentive to "vigorously pursue all claims" and states she has "no conflicts with the other [class] members." (Doc. No. 58 at 19.) United does not present any evidence that Plaintiff and her counsel have unavoidable conflicts with other class members or will be unable to vigorously prosecute the action. (See generally Doc. No. 66.) Accordingly, adequacy has been satisfied. Staton, 327 F.3d at 957.

### v. Summary

In sum, Plaintiff has not satisfied Rule 23(a)'s typicality requirement. Given that the Court's ruling on the typicality requirement is not alone dispositive of Plaintiff's Motion, the Court addresses whether she is entitled to certification under Rules 23(b)(2), (b)(3), and (c)(4).

### B. Rule 23(b)(2) Injunctive or Declaratory Relief Class

To obtain class certification under Rule 23(b)(2), Plaintiff must satisfy all of Rule 23(a)'s requirements and show that United "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Dukes, 564 U.S. at 360.

Plaintiff's inability to seek injunctive relief prevents certification under Rule 23(b)(2). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc). A "plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011). Here, Plaintiff has not demonstrated a likelihood of irreparable harm.

Plaintiff's Policy was reinstated and she does not allege that the damages she seeks to recover would constitute an inadequate remedy. Plaintiff has therefore not made a showing of entitlement to injunctive relief sufficient to allow her to represent a class.[4] Hodgers-Durgin, 199 F.3d at 1045.

Additionally, Plaintiff's claim for declaratory relief is not a basis for certification because it will not clarify or settle the legal questions at issue. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). Here, Plaintiff seeks a "declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013 to Defendant's California policies in force as of or any time after January 1, 2013."[5] (Doc. No. 22, FAC ¶ 132.) That issue, however, was decided by the California Supreme Court in McHugh. The McHugh Court held that "sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." McHugh, 12 Cal.5th at 220. Plaintiff's request for declaratory relief is therefore moot. See, e.g., Moriarty v. Am. Gen. Life Ins. Co., No. 3:17-CV-1709-BTM-WVG, 2022 WL

---

[4] Additionally, Plaintiff alleges that if "Defendant is not enjoined from engaging in the unlawful business practices described above [i.e. not complying with the Statutes], Plaintiff, the Class, and the general public will be irreparably injured." (Doc. No. 22, FAC ¶ 150.) United, however, provided evidence that for policies issued on or after October 31, 2016, it began fully complying with the Statutes. (Doc. No. 66-3, Curtis Decl. ¶¶ 6, 12, 16, 18.)

[5] Plaintiff also seeks declaratory relief regarding whether United's terminations were effective. (Doc. No. 58 at 2.) Declaratory relief is not appropriate "where determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." Vascular Imaging Pros., Inc. v. Digirad Corp., 401 F. Supp. 3d 1005, 1010 (S.D. Cal. 2019). Here, Plaintiff's claim for declaratory relief is duplicative of her breach of contract claim. Accordingly, declaratory relief is not appropriate. See, e.g., BASF Corp. v. ENS, Inc., No. 22-cv-577, 2022 WL 16973248, at *4 (C.D. Cal. Nov. 16, 2022).

2959560, at *4 (S.D. Cal. July 26, 2022) (rejecting similar declaratory judgment claim as moot based on McHugh); Pitt, 2022 WL 17972167 at *9 (same).

Further, Plaintiff's claim for monetary damages also precludes certification under Rule 23(b)(2). Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Dukes, 564 U.S. at 360–61. Here, Plaintiff seeks individualized monetary relief in the form of "direct and foreseeable economic damages." (Doc. No. 22, FAC ¶ 141.) Plaintiff's request for damages would require assessment of each class member's claim based on the terms of their policies, United's compliance with the Statutes with respect to their policies, the payment of any unearned premiums, and any policy devaluations. Accordingly, certification is improper because "individualized monetary claims belong in Rule 23(b)(3)," not Rule 23(b)(2). Dukes, 564 U.S. at 362; see also Ellis v. Costco Wholesale Corp., 657 F.3d 970, 986 (9th Cir. 2011) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."); Algarin v. Maybelline, LLC, 300 F.R.D. 444, 459 (S.D. Cal. 2014) ("Certification is improper [under Rule 23(b)(2)] where, as here, the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages.")

### C. Rule 23(b)(3) Predominance Requirement

To obtain class certification under Rule 23(b)(3), Plaintiff must satisfy all of Rule 23(a)'s requirements and show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Wolin, 617 F.3d at 1172 (internal quotations and citations omitted). Courts must compare the "quality and import of common questions to that of individual questions" to determine whether a class satisfies the predominance requirement. Jabbari v. Farmer, 965 F.3d 1001, 1005 (9th Cir. 2020).

Plaintiff is unable to meet the "more demanding" predominance standard because individual questions engulf the case. Plaintiff provides a couple of categories of common evidence to attempt to meet this standard. (Doc. No. 58 at 11-12, 23.) Specifically, for policies sold before January 1, 2013, Plaintiff states that United "made a policy decision not to apply the Statutes to pre-2013 life insurance policies." (Id. at 11.) For policies sold on or after January 1, 2013, Plaintiff states that "it was not until October 31, 2016 when Defendant believes it achieved full compliance."[6] (Id.) Based on those statements, Plaintiff asserts that United "lapsed and/or terminated thousands of policies for nonpayment of premium" without first providing "(1) an annual notice of the right to designate someone . . . ; and/or (2) providing a 60-day grace period."[7] (Doc. No. 58 at 11; Doc. No. 58-4 Ex. 3 at 11-12, 14-15.)

In response, United provides evidence that for policies issued before January 1, 2013, United began sending annual third-party designation notices in October 2016. (Doc. No. 66-3, Curtis Decl. ¶ 12.) For the pre-2013 policies that lapsed prior to October 2016, United stated that "a substantial number of these policies lapsed within a year of their issuance" and these policies "would not have reached the point where an annual notice would have been required under the Statutes." (Id.) Additionally for the pre-2013 policies, United's practice was to provide a 60-day grace period before a policy would lapse for nonpayment, even if the policy terms contained a grace period of less than 60 days. (Id. at 16.) And following the McHugh decision on August 30, 2021, United began sending out riders to pre-2013 policy holders so that their policies would contain an express 60-day grace period term as part of their policy. (Id.)

---

[6] Plaintiff relies on testimony from United's 30(b)(6) deponent, Christine Curtis, to support those two statements. (Doc. No. 58 at 11; Doc. No. 58-2 at 11-13, 16-17.)

[7] Plaintiff does not appear to offer common evidence that United violated the Statutes' requirement that notice be given at least 30 days before the date of termination. (See Doc. No. 58 at 11-12.) Nonetheless, United provided evidence that its' practice was to comply with the 30-day notice requirement for policies issued both before and after January 2013. (Doc. No. 66-3, Curtis Decl. ¶ 18.)

For policies issued after January 1, 2013, United gave individuals an initial opportunity to designate a third-party designee along with their application for life insurance.[8] (Doc. No. 66-3, Curtis Decl. ¶ 13.) United then sent annual third-party designation notices to policies issued after January 1, 2013 beginning in February 2015. (Id.) Additionally, all policies issued after January 1, 2013 contained a 60-day grace period. (Id. at 17.) Further, United regularly extended grace periods when directed by regulators, such as for wildfires or Covid-19. (Doc. No. 66-5, Dougherty Decl. ¶ 18.)

Here, Plaintiff's common evidence is overrun by individual questions. Given the evidence presented from both parties, the following are some of the individual factual issues that would predominate at trial: (1) the specific terms of each class member's policy; (2) the timing of any third-party designation notice and whether a policy lapsed before the annual notice date; (3) whether each class member was given a 60-day grace period in practice;[9] and (4) each class member's intent regarding the lapse and/or termination of their policy. Moreover, multiple district courts with a case involving alleged violations of the Statutes have found that similar individual issues predominate. See Moriarty v. American General Life Insurance Co., No. 17-cv-1709-BTM-WVG, 2022 WL 6584150, at *4 (S.D. Cal. Sept. 27, 2022) (denying class certification motion because "common questions do not predominate"); Pitt, 2022 WL 17972167 at *7 (denying class motion because "individual issues would predominate at trial").

Plaintiff attempts to refute these cases by citing to Bentley v. United of Omaha

---

[8] For example, United gave Plaintiff a third-party notice request form along with her Policy application on May 5, 2016. (Doc. No. 66-5, Dougherty Decl. ¶ 6, Ex. G Third Party Notice Request Form.) Plaintiff signed the third-party notice request form and listed herself as the additional person to receive notice of nonpayment of premium. (Id.)

[9] For example, Plaintiff's Policy, which was issued on June 6, 2016, contained a rider that established a 60-day grace period. (Doc. No. 66-3, Curtis Decl. ¶ 13.) However, Plaintiff only received 59 days due to United's error computing the notice period. (Doc. No. 58-7, Plt. Decl. ¶ 6; Doc. No. 66 at 11.) The facts surrounding Plaintiff's grace period illustrate that whether United violated the Statutes' 60-day grace period is an individualized issue.

Life Ins. Co., No. 15-cv-7870-DMG-AJW, 2018 WL 3357458 (C.D. Cal. May 1, 2018). (Doc. No. 58 at 22.) Bentley is inapposite. In Bentley, the class was comprised of 43 members. Bentley, 2018 WL 3357458 at *7. That is the case because the plaintiff sought certification of a class of beneficiaries only. Id. at *2. Additionally, the class was limited to only include third-party designation violations and it excluded policies where the policy files demonstrated that the owner had affirmatively terminated the policy. Id. at *7. The court was thus able to find predominance because there was a "uniform practice of not providing notice to policyholders and their designees." Id. at *11. Here, Plaintiff's class is not limited to beneficiaries only, it is not limited to just the third-party designation issue, and it does not exclude policies where the owner affirmatively terminated the policy. Thus, predominance is not met here because there is no "uniform practice" that applies to the class as a whole. Jabbari, 965 F.3d at 1005; Pitt, 2022 WL 17972167 at *7 ("[T]he fact that [the insurance company] took the legal position that the Statutes did not apply to policies issued prior to 2013 does not, without more, lead to the conclusion that [the insurance company] indeed violated those Statutes as to all policies issued prior to 2013.").

Further, Plaintiff must prove damages resulting from the defendant's breach to establish liability for breach of contract. Here, United provided evidence that demonstrates a significant number of policy lapses were likely intentional on the part of the class members. For example, out of a random sampling of 100 class member policies analyzed by United's expert, 26 contained evidence that the policy owner affirmatively sought to cancel the policy. (Doc. No. 66-2, Craig Merrill's Expert Report at 35.) An additional 59 policies contained evidence that the lapse was not inadvertent because the policy owner was actively managing the policy in close proximity to the lapse. (Id.) A class member who intentionally chose to let her policy lapse suffers no damages and thereby invokes an "individualized issue" not ripe for class certification. See Van v. LLR, Inc., et al., --- F.4th ---, 2023 WL 2469909, at *11-12 (9th Cir. March 13, 2023) (vacating grant of class certification where defendants showed that 18 of the 13,860 class

members were uninjured).

In sum, Plaintiff's evidence does not establish that common issues would predominate over individual issues with respect to United's liability for its alleged violation of the Statues.  Wolin, 617 F.3d at 1172.

### D. Rule 23(c)(4) Legal Issues Class

Plaintiff asks in the alternative for certification of an issues class under Rule 23(c)(4).  (Doc. No. 58 at 25.)  "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Certification of an issues class under Rule 23(c)(4) is appropriate only if it materially advances the disposition of the litigation as a whole." Rahman v. Mott's LLP, 693 F. App'x 578, 580 (9th Cir. 2017) (citations and internal quotation marks omitted).

Here, Plaintiff asks the Court to certify the issue of whether the "Statutes apply to United's policies in force as of January 1, 2013." (Doc. No. 58 at 25.)  This issue has already been decided by the California Supreme Court in McHugh. 12 Cal.5th at 220. Additionally, Plaintiff seeks to certify the issue of whether "United's admitted failure to comply with the Statutes rendered its terminations ineffective." (Doc. No. 58 at 25.) Plaintiff has failed to establish that certification of such an issue would materially advance the disposition of the litigation as a whole given the varied factual questions that underly United's compliance with the Statutes.  Accordingly, certification is not appropriate under Rule 23(c)(4).  Rahman, 693 F. App'x 580.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for class certification.

**IT IS SO ORDERED.**

DATED: March 28, 2023

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT